Allen, J.
 

 Plaintiff in error claims that Section
 
 *607
 
 6292 of the act providing for the levy of a tax on the operation of motor vehicles on the public highways, as contained in the act, 110 O. L., 211, 222, and Sections 6290, 6291, 6292, 6293, 6294, 6295, 6309, 6309-1 and 6309-2, as contained in the act, 108 O. L., 1078, 1079, and the said entire act, 108 O. L., 1078, and Section 6309 and Section 6309-1, as contained in the act, 108 O. L., 1165, and the entire act, 108 O. L., 1165, are unconstitutional and void. These sections, which must be considered for the purpose of this discussion, are in their pertinent portions as follows:
 

 Section 6290 defines the terms motor vehicle, tractor and traction engine, passenger car, commercial car, owner, manufacturer, and dealer, state and public roads and highways. It defines “passenger car” as meaning any motor vehicle designed and used for carrying not more than seven persons. It defines “commercial car” as meaning any motor vehicle having motive power, designed and used for carrying merchandise or freight, or for carrying more than seven persons.
 

 Section 6291 (110 O. L., 244):
 

 “An annual license tax is hereby levied upon the operation of motor vehicles on the public roads or highways of this state, for the purpose of enforcing and paying the expense of administering the law relative to the registration and operation of such vehicles and of maintaining and repairing public roads and highways and streets. Such tax shall be at the rates specified in this chapter and shall be paid to and collected by the secretary of state or deputy registrar at the time of making application for registration as herein provided.”
 

 
 *608
 
 Section 6292 (108 O. L., pt.
 
 2,
 
 107-9):
 

 “Each owner of .a motor vehicle shall pay or cause to be paid taxes as follows: # * #
 

 “For each passenger car having twenty-five horse power or less, eight dollars; for each such car having more than twenty-five and not more than thirty-five horse power, twelve dollars; for each such car having more than thirty-five horse power, twenty dollars.
 

 “For each commercial car, the same tax based on horse power, and in the same classifications as are herein provided for passenger cars, and in addition thereto twenty cents for each one hundred pounds gross weight of vehicle and load, or fractional part thereof.”
 

 As amended by 110 O. L., 222, this section reads as follows, in the pertinent part thereof:
 

 “Each owner of a motor vehicle shall pay or cause to be paid taxes as follows: # * #
 

 “For each commercial car having twenty-five horse power or less eight dollars, and in addition thereto twenty cents for each one hundred pounds gross weight of vehicle and load or fractional part thereof.
 

 “For each commercial car having more than twenty-five and not more than thirty horse power twelve dollars, and in addition thereto thirty cents for each one hundred pounds gross weight of vehicle and load or fractional part thereof.
 

 “For each commercial car having more than thirty horse power twenty dollars, and in addition thereto eighty cents for each one hundred pound* gross weight of vehicle and load or fractional part thereof.”
 

 
 *609
 
 Section- 6293, General Code (108 O. L., pt. 2, 1080):
 

 “In determining the gross weight of vehicle and load, in the case of commercial cars designed and used for carrying passengers, the weight of passengers shall be computed at one hundred and twenty-five pounds for each passenger, according to the number of seats for adults -actually provided, and such weight so computed added to the weight of the vehicle fully equipped. In determining the gross weight of vehicle and load in the case of motor trucks and trailers the manufacturer’s rated carrying capacity shall be added to the weight of the vehicle fully equipped.
 

 “The horse power of all vehicles propelled by intemal combustion engines shall be computed upon the following formula: Square the diameter of the cylinder measured in inches, multiply by the number of cylinders and divide by two and one-half. For all motor vehicles propelled by steam engines the rating of the horse power thereof shall be based on the system of rating adopted by the United States government. [The IS'. A. E. formula.]
 

 “For all motor vehicles propelled by electricity the rating of the horse power thereof shall be the normal horse power of the electric motor therein, to be ascertained by the secretary of state.”
 

 Section 6294- prescribes the method in .which every owner of a motor vehicle must make written application to the secretary of state for registration.
 

 Section 6295 apportions the tax payable according to the time of application.
 

 Section 6309, General Code (108 O. L., pt. 2, 1165):
 

 
 *610
 
 “The secretary of state shall open an account with each municipal corporation and county district of registration in the state. All registration and duplicate registration fees he shall pay weekly into the state treasury with other receipts of his office. The tax collections he shall apportion between the state and the several districts of registration, and pay the state’s portion thereof weekly into the state treasury with other receipts of his office. He shall deposit the proceeds of tax collections due districts of registration weekly with the treasurer of state, who shall be the custodian of such funds and shall disburse the same in the manner provided in Section 6309-1 of the General Code. The treasurer of state shall give a separate and additional bond, in the sum of three hundred thousand dollars, the premium on which, if any, shall be paid by the secretary of state from his appropriation for defraying the expenses incident to carrying out and enforcing the provisions of this chapter and the sureties on which shall be approved by the auditor of state, conditioned for the faithful performance of his duties as such custodian. Such bond shall be deposited in the office of the secretary of state.”
 

 Section 6309-1, General Code (108 O. L., pt. 2, 1166):
 

 “The treasurer of state is hereby authorized to deposit any portion of the funds due districts of registration under this chapter not needed for immediate distribution, in the same manner and subject to all the provisions of the law with respect to the deposit of active state funds by such treasurer; and all interest earned by such funds
 
 *611
 
 so deposited shall be collected by him and placed in the state treasury to the credit of the ‘state maintenance and repair fund.’ On the first business day of each month the secretary of state shall draw and transmit to the auditor of each county a voucher on the treasurer of state for the amount of the tax collection apportioned to districts of registration located wholly or in part in his county, accompanying the same with a statement showing the distribution of thé amount represented thereby to each such district of registration. The county auditor shall certify the amount so transmitted into the county treasury to the credit of the undivided tax funds therein. ’ ’
 

 Section 6309-'2, General Code (108 O. L., pt. 2, 1083):
 

 “The revenue collected under the provisions of this chapter shall be distributed as follows:
 

 “(1) All. fees collected under this chapter shall be paid into the state treasury to the credit of a fund to be designated as the ‘ state maintenance and repair fund.’
 

 “(2) Fifty per centum of all taxes collected under the provisions of this chapter shall be for the use of the municipal corporation or county which constitutes the district of registration as provided in this chapter. Such moneys shall be paid into the treasury of the proper county as provided herein and distributed as are other taxes. In the treasuries of such municipal corporations and counties, such moneys shall continue a fund which shall be used for the maintenance and repair of public roads and highways and streets and for no other purpose, and shall not be subject to trans
 
 *612
 
 fer to any other fund. ‘Maintenance and repair’ as used in this section, includes all work done upon any public road or highway, or upon any street, in which the existing foundation thereof is used as the subsurface of the improvement thereof, in whole or in substantial part.
 

 “(3) Fifty per centum of all taxes collected under the provisions of this chapter, shall be paid by the secretary of state into the state treasury to the credit of the ‘state maintenance and repair fund.’
 

 “The ‘state maintenance and repair fund’ provided for herein shall be available for the use of the secretary of state in defraying the expenses incident to carrying out and enforcing the provisions of this chapter and for the use of the state highway commissioner in the manner provided by law. The General Assembly shall make appropriations therefrom for such purpose.”
 

 Plaintiff in error claims that the sections of the statute above cited are repugnant to the Fourteenth Amendment to the United States Constitution, to Article I, Section 1, and Article I, Section 19, of the state Constitution, and to various other provisions of the Ohio Constitution hereinafter quoted.
 

 In support of its contention that the above sections of the statute are unconstitutional and void, the plaintiff in error claims:
 

 “1. That the Legislature, in enacting this statute with its amendments, arbitrarily and unreasonably classified persons within such classes, and urges the following subpropositions in support of this contention:
 

 
 *613
 
 “(a) That the Legislature, while having the right to classify those who employ the highways into motorists and those who are not motorists, cannot go further and subdivide motorists into pleasure car owners and commercial vehicle owners.
 

 “(b) That the Legislature cannot, constitutionally, resubdivide commercial vehicle owners into classes according
 
 to the horse power
 
 of their trucks, and
 

 “(c) That the legislative adoption of the S. A. E. formula, for the purpose of classification of motor trucks, is discriminatory and lacks uniformity, and fails to operate equally upon all persons in the same category, and is therefore such an unreasonable classification as to be in violation of the constitutional provisions hereinabove set forth.
 

 “2.
 
 The tax levied upon the plaintiff and all other motor vehicle owners in Ohio is excessively out of proportion to the object sought to be accomplished, namely, the maintenance and repair of roads, and the act is therefore unreasonable and void, because it exceeds legislative power to tax a privilege.
 

 “3. The Legislature of Ohio has no power, under the Constitution, to levy a tax, in whole or in any part, for the benefit of home rule municipal corporations and counties.
 

 “á.
 
 The Legislature has no right to delegate to automobile manufacturers or to other private individuals the power to determine the rate or the amount of the tax on automobiles, but such right must be exercised only through a state agency. ’ ’
 

 We view two of these questions somewhat differently from plaintiff in error. The tax is levied, not
 
 *614
 
 upon the owner of the ear, but upon the ear itself. Hence the problem is not whether owners can be classified, for purposes of taxation, into pleasure car owners and owners of commercial vehicles; nor is the problem whether motor vehicle owners can be taxed according to the horse power of their trucks. Bather, the problem is whether the Legislature for purposes of taxation can classify motor cars into pleasure cars and commercial vehicles, and whether commercial motor cars can be classified according to horse power.
 

 We shall consider these propositions in order. The first question, whether the Legislature can constitutionally classify motor cars into pleasure cars and commercial vehicles, has been decided adversely to the plaintiff in error’s contention in a number of jurisdictions.
 
 Ogilvie
 
 v.
 
 Hailey,
 
 141 Tenn., 392, 210 S. W., 645;
 
 Park
 
 v.
 
 City of Duluth,
 
 134 Minn., 296, 159 N. W., 627;
 
 In re Hoffert,
 
 34 S. D., 271, 148 N. W., 20, 52 L. R. A., (N. S.), 949.
 

 And, if there were no authority upon this proposition, it would give us little difficulty, for the court will take judicial notice that the destruction done to roads by automobile traffic is due more often to commercial vehicles, owing to their greater weight, and to the character of their tires and general construction, than to pleasure cars. The classification of motor vehicles into pleasure cars and commercial vehicles, for the purposes of this tax, therefore is based upon reason, and is not unconstitutional.
 

 The next question raised is whether the Legislature can constitutionally classify commercial motor vehicles according to horse power. It might seem
 
 *615
 
 that this question had already been decided in the
 
 Saviers case,
 
 101 Ohio St., 132, 128 N. E., 269; which upheld the validity of the original automobile license-fee statute. , The original statute divided commercial vehicles into classes according to their horse power, and while this specific question was not raised in the case, the statute was sustained in a broad decision. Moreover, other jurisdictions have held a rate based upon horse power constitutional and valid.
 
 Lillard
 
 v.
 
 Melton,
 
 103 S. C., 10, 87 S. E., 421;
 
 Smith
 
 v.
 
 Commonwealth,
 
 175 Ky., 286, 194 S. W., 367;
 
 Kane
 
 v.
 
 New Jersey,
 
 242 U. S., 160, 37 S. Ct., 30, 61 L. Ed., 222;
 
 Hendrick
 
 v.
 
 Maryland,
 
 235 U. S., 610, 35 S. Ct., 140, 59 L. Ed., 385;
 
 Cleary
 
 v.
 
 Johnston,
 
 79 N. J. Law, 49, 74 A., 538;
 
 In re Schuler,
 
 167 Cal., 282, 139 P., 685, Ann. Cas., 1915C, 706.
 

 In the case of
 
 Lillard
 
 v.
 
 Melton, supra,
 
 the court says, at page 17, (87 S. E., 424):
 

 “Having determined the nature of the license fee imposed, it remains to be ascertained if the method of apportionment prescribed in the act is violative of the clauses of the Constitution referred to. The apportionment on a basis of horse power has a direct and natural relation to the privilege granted — the use of the highway, and, since the license relates to all persons in a class, and operates uniformly upon all therein, there is no unlawful discrimination.”
 

 In
 
 Smith
 
 v.
 
 Commonwealth,
 
 supra, the eighth paragraph of the syllabus reads:
 

 “8.
 
 Licenses
 
 — Motor
 
 Vehicles
 
 — Police Power.— The regulation of motor vehicles and the imposition of a license tax, which is in excess of the cost
 
 *616
 
 of their regulation and supervision, for the privilege of using them upon the public highways, and which is applied to the improvement of the highways, is a valid exercise of the police power of the state, and the license tax may be graduated upon the basis of the injury wrought by the vehicles of different horse power to the roads.”
 

 And at page 297 of the opinion (194 S. W., 372) the court says:
 

 “When the entire act is read and all of the sections considered together, it is apparent that it was the intention and purpose of the Legislature to exact the license tax for the privilege of the use of the vehicle upon the roads of the state, and that the license fee was graduated according to the destructiveness which would result to the roads from the use of the vehicles of greater or less horse power.”
 

 In
 
 Hendrick
 
 v.
 
 Maryland, supra,
 
 the court, speaking of the power of the state to require the registration of motor vehicles and the licensing of their drivers, says that the state may charge therefor “reasonable fees graduated according to the horse power of the engines — a practical measure of size, speed, and difficulty of control.”
 

 In the case of
 
 In re Schuler,
 
 167 Cal., 282, 139 P., 685, Ann. Cas., 19150, 706, the fixing of the tax upon motor vehicles according to horse power was specifically attacked. The court, after holding the tax imposed to be an excise or privilege tax, further holds, in the syllabus:
 

 “Such statute is not invalid, because the license fee therein exacted is fixed according to the horse power of the vehicle, not according to the value of
 
 *617
 
 the property, as the imposition is a privilege tax charged in the nature of compensation for the damage done to the roads of the state, and is properly based, not upon the value of the machine, but upon the amount of destruction caused by it. # # #
 

 “Such statute is not violative of the ‘due process’ clause of the Constitution, in imposing the license tax according to horse power, for an automobile of high power is generally heavier and more destructive to roads than one of low power.”
 

 Indeed, we have found no case, in which the question of taxing motor vehicles according to horse power has been raised, which has not held such a tax valid, upon the principle that damage and destruction done to the highways are peculiarly the work of motor vehicles, and that a tax in proportion to their power of destruction, that is, in proportion to their horse power, is in that regard a just and reasonable tax.
 

 However, the plaintiff in error maintains that horse power has nothing to do with the damage to the road, and that a tax based upon horse power is hence arbitrary and unreasonable. The findings of fact made by the Court of Appeals were that weight, carrying capacity, and speed are the three elements which cause the damage done by motor vehicles to roads and highways. And the Court of Appeals further found that:
 

 “Certain of said trucks of slightly less than 30 horse power, by the S. A. E. formula, are of approximately equal weight, carrying capacity, and speed, and do substantially the same damage to the highways, as certain other of said trucks of
 
 *618
 
 slightly more than 30 horse power, by the same formula.”
 

 Plaintiff in error claims that this finding shows that trucks of approximately the same speed, carrying capacity, and weight are not in the same category, and that horse power, as computed by the formula, has nothing to do with weight, carrying capacity, and speed.
 

 The defendant in error, on the contrary, claims that the amount of power tends to increase with the area of the distance, that the amount of power tends to increase with the number of cylinders, that a larger horse power means a larger driving power, and hence a larger possible momentum; that momentum is the product of speed multiplied by gross weight, and that horse power hence has a relation to weight, carrying capacity, speed, and the destruction of the roads.
 

 The finding of the Court of Appeals is not particularly cogent in leading us to adopt plaintiff in error’s view. It does not tell us how many trucks of less than 30 horse power do substantially the same damage to the highways as other trucks of more than 30 horse power; and, while this finding does indicate occasional inequality in the operation of the tax, it does not show that the tax operates with universal, nor even with usual, inequality upon commercial motor vehicles; neither does it find that horse power has no relation to weight and speed.
 

 Horse power is an arbitrary unit for the measurement of the rate.at which a prime motor works. The prevailing value of the unit is Watt’s horse power, which is defined as 550 foot pounds per
 
 *619
 
 second, or 33,000 foot pounds per minute. In other words, horse power is a unit which measures work done and weight carried; that is, under the facts of this case, horse power does relate to pressure put upon the roads, and hence a classification for taxation purposes based upon horse power is reasonable.
 

 In any case where a line is established for taxation purposes there will be a twilight zone in which the persons or the property on one side of the line will approach so nearly in description to the persons or property on the other side of the line that inequality of a certain character will result in the operation of the tax. We see no reason, however, under the above-quoted finding of fact, to hold that horse power has nothing to do with damage to the roads.
 

 Plaintiff in error, however, claims that the S. A. E. formula in itself is discriminatory, and lacks uniformity in operation. Apparently, plaintiff in error desires to have the manufacturers’ rated horse power used as a basis of the tax, if a tax based upon horse power is to be upheld. At one point of its brief, plaintiff in error argues that manufacturers, for purpose of gain, may rate the tonnage of a truck at five, instead of four, tons. In other words, it urges that the manufacturers’ rate is pure estimate, and subject to alteration. This, being true of the manufacturers’ rate on tonnage, is also true of the manufacturers’ rate on horse power, and in fact plaintiff in error’s briefs admit that the manufacturers’ rated horse power is not an actual horse power. It may be that, with changing methods of adapting gears to weight
 
 *620
 
 and speed, the S. A. E. formula does not to-day compute horse power with absolute accuracy. However, defects in the system should be called to the attention of the Legislature. In adopting the rating of the Society of Automobile Engineers, the Legislature, so far from acting arbitrarily, used commendable foresight. A rating based upon actual scientific measurement of cylinders would, at least in certain respects, be more accurate than a mere estimate.
 

 And it is the Legislature, not the court, which is invested with the power of selecting the standard upon which to base the classification.
 

 “Granting the power of classification, we must grant government the right to select the differences upon which the classification shall be based, and they need not be great or conspicuous.”
 
 Citizens Telephone Co. of Grand Rapids
 
 v.
 
 Fuller, Auditor General,
 
 229 U. S., 322, 33 S. Ct., 833, 57 L. Ed., 1206.
 

 We shall next consider the question whether the tax levied upon commercial vehicles by this statute is excessively out of proportion to the object sought to be accomplished, and is therefore unreasonable and void.
 

 Plaintiff' in error bases this claim upon the finding of the Court of Appeals:
 

 “That the revenues collected from Section 629'2, General Code, for the year ending June 30, 1922, were $7,330,080.78; for the year ending June 30, 1923, $9,981,434.09 ; that the increase of 1924 over 1923 is estimated at about 20 per cent.
 

 “That the Legislature’s appropriations for maintenance and repairs for the year ending June 30,
 
 *621
 
 1924, are $4,271,290; that its appropriation for said purpose for the year ending June 30, 1925, is $4,771,290.
 

 “That the appropriations for all expenses o.f the secretary of state in the automobile registration department for the year ending June 30, 1923, are $206,280; in 1924, $236,760; in 1925, $234,610.”
 

 The balance in the maintenance and repair fund on June 30, 1922, was $1,956,258.91, and on June 30, 1923, it was $3,337,620.36.
 

 Substantially this same question was raised in the case of
 
 Saviers
 
 v. Smith, supra, in the petition attacking the constitutionality of the original automobile excise tax law. In that case it was alleged that taxes in excess of $7,000,000 would be collected under the law, and that the cost of enforcing and administering the act would not exceed the sum of $16,000. And it was also alleged in that case that the taxes imposed by the act greatly exceeded the value of the privilege of using the public highways, and greatly exceeded the combined value of the privilege of using the public highways and the expense of enforcing and administering the act.
 

 Upon the judgment in the
 
 Saviers case,
 
 this question seems to be precluded here.
 

 It appears in the record that the present balance is unusually large, because the taxes were collected much earlier in the year 1923 than in 1922.
 

 Also the portion of the tax which is allotted under the act to districts of registration is not taken account of in this finding although that sum
 
 *622
 
 for the year ending June 30, 1923, in round numbers approximates five million dollars.
 

 Moreover, the Legislature necessarily has discretionary power as to how and at what times it shall disburse the funds realized from this tax. It may wish to disburse varying amounts in different years.
 

 The statute must be considered from the standpoint that it will be enforced over a long period of time. In view of the increasing mileage of the state highway system, the greater traffic which is to be contemplated, the increase in the cost of highway maintenance, and the possible fluctuations in the receipts under this statute, this court cannot say, even apart from the fact that the point has been settled in the
 
 Saviers case,
 
 that the difference between the legislative appropriation for one year, or for even a few years, and the funds available for those years, makes the tax so in. excess of the gross value of the privilege as to be unconstitutional.
 

 Plaintiff in error’s own authorities support the position of the defendant in error that this law cannot upon this point be declared unconstitutional, under this record. As stated by Judge Jones in
 
 Castle
 
 v.
 
 Mason,
 
 91 Ohio St., 296, at page 305, 110 N. E., 463, 465, (Ann. Cas., 1917A, 164):
 

 “It is not necessary that the Legislature determine with exact nicety the amount of the inspection charges required to carry its purpose into execution. This is manifestly impossible, owing to the varying fluctuations of trade. Mere excess in.net surplus revenues is of itself no warrant in disturbing the la,w; nor would we feel disposed to
 
 *623
 
 hold that a flagrant excess in a single year over the expenses would invalidate it.”
 

 Plaintiff in error next urges numerous contentions against the constitutionality of Sections 6309, 6309-1, and 6309-2, and related sections.
 

 Plaintiff in error cites no authority whatever for these propositions, but we shall examine them in detail. Under the above sections, the automobile tax provided for in Section 6292, General Code, is paid by the owner of the motor vehicle to the secretary of state. The secretary of state under the act, 108 O. L.; pt. 2, p. 1082, pays one-half of the taxes received, “the state’s portion thereof,” into the state treasury. Section 6309, General Code. As provided by 108 O. L., pt., 2, p. 1165, the secretary of state deposits one-half of the taxes with the treasurer of state as “custodian,” and the treasurer of state, in this capacity, is required to give a special bond. Section 6309, General Code. The money is then paid out of the special fund of the “custodian” on a voucher of the secretary of state transmitted to each county auditor, and the county auditor then certifies the amount so transmitted into the county treasury to the credit of the undivided tax funds therein..
 

 Section 6309-2 further provides that this money (50 per cent, of all taxes collected under the act), after being received into the treasury of the county or municipal corporation which constitutes the district of registration, as provided in the chapter, shall be distributed as are other taxes, but shall be used for the maintenance and repair of public roads, highways, and streets, and for no other
 
 *624
 
 purpose, and shall not be subject to any other fund.
 

 Plaintiff in error attacks this provision on the ground that none of the moneys thus paid out to the county auditors enter the state treasury; that none of such moneys are appropriated by the General Assembly of Ohio, under Article II, Section 1, and Article II, Section 22, of the state Constitution; and that the state has reserved no right of supervision, control, or direction as to the expenditure of such moneys, and that, hence, the above sections are unconstitutional.
 

 Article II, Section 1, is the section which provides that the legislative power of the state shall be vested in the General Assembly. Article IT, Section 22, provides that no money shall be drawn from the treasury, except in pursuance of a specific appropriation made by law, and that no appropriation shall be made for a longer period than two years.
 

 As shown by the statutes above quoted, that part of the taxes apportioned to the districts of registration does not enter the state treasury as other taxes, but is placed in the custody of the state treasurer, to be disbursed under ¡Section 6309-1. General Code. However, since none of this 50 per cent, of the receipts from the taxes enters the state treasury, Article II, Section 22, does not apply, and hence is not violated. This provision of the Constitution applies only when money is drawn from the treasury, and therefore plaintiff in error’s objection that the money is not appropriated by the Legislature, and is not appropriated for specific purposes, is untenable.
 

 
 *625
 
 While it is true that this money is not appropriated by the General Assembly after payment to the county auditors, it is also true that it has been already appropriated by the General Assembly to the maintenance and repair of public roads, highways, and streets in municipalities and in counties (Section 6309-2, General Code), and hence Article II, Section 1, is not violated.
 

 Is the law unconstitutional, because none of the money paid to counties or municipalities enters the state treasury, and because the state has reserved no right of supervision as to the expenditure of such money? That these provisions are novel is conceded. If the Constitution is a grant of legislative power, it would be a serious question whether the Constitution had vested the Legislature with power to enact such statutes. However, the Constitution is not a grant of legislative power, but a. limitation thereon.
 
 Mason
 
 v.
 
 State, ex rel. McCoy,
 
 58 Ohio St., 30, 50 N. E,, 6, 41 L. R. A., 291;
 
 Baker
 
 v.
 
 City of Cincinnati,
 
 11 Ohio St., 534.
 

 A limitation upon the right of the Legislature to exercise certain powers must either be found in express terms, or be clearly inferable by necessary implication from the language of the instrument, when fairly construed according to its manifest spirit and meaning.
 
 Cass
 
 v.
 
 Dillon,
 
 2 Ohio St., 607.
 

 We are unable to find that the Legislature is restricted, either expressly or impliedly, from enacting the above provisions, and hence these contentions are overruled.
 

 Plaintiff in error further urges that as to the one-half of the tax which is paid into the state
 
 *626
 
 treasury, the provision of Section 6309-2, General Code, that such money shall be expended only for particular purposes and in a particular manner is unconstitutional because if binding at ail it is only because of Article XII, Section 5, which applies only to general property taxes levied, and therefore would make the tax a direct tax in violation of Article XII, Section 2. Article XII, ¡Section 5, provides that no tax shall be levied, except in pursuance of law, and that every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied. We are unable to agree with this proposition. The limitation contained in Section 6309-2, General C'ode, upon the method in which the money raised by this tax shall be expended is constitutional and binding because it falls within the general legislative power. As the tax is an excise tax
 
 (Saviers
 
 v.
 
 Smith, Sec’y. of State,
 
 101 Ohio St., 132, 128 N. E., 269), and not a property tax, the above limitation does not violate Article XII, Section 2, which provides that laws shall be passed, taxing property by a uniform rule.
 

 Plaintiff in error next attacks that part of the law which relates to the one-half of the tax which is paid for the maintenance and repair of public-roads, highways and streets in counties- and municipalities. This money is deposited by the secretary of state with the treasurer of state, in his capacity as “custodian,” and is paid out by voucher to- the county auditors, who certify the amount so transmitted into the county treasuries. Plaintiff in error claims that, if this is a state tax, under Article XII and Article II, Sections 1 and 22, respectively,
 
 *627
 
 the tax should he paid, not to some officer designated by the state, but to the state of Ohio, and that it should be paid into the state treasury. It also urges that the Legislature has, in this provision, levied a tax for the benefit of home rule municipal corporations and counties.
 

 We cannot agree with this contention. In the first place, no distinction is made in the act between cities which have charters and those which operate under general statute. All cities which constitute districts of registration benefit by the act. Moreover, while cities and counties do benefit by the act, they receive this benefit not by virtue of being cities and counties as such, but by virtue of being a part of the state. The tax is levied for the benefit of the state as a whole. It is to be used for the maintenance and the repair of public roads, highways, and streets throughout the state, and for no other purpose. The counties and municipal corporations are a part of the state. Part of the money raised by this act will be expended within their limits, but also within the state. In other words, the tax is a state tax levied for state purposes, and not for the benefit of municipalities, or of counties as such.
 
 Miller
 
 v.
 
 Korns,
 
 107 Ohio St., 287, 140 N. E., 773.
 

 As this tax is a state tax, is the law unconstitutional because the tax is paid, not into the state treasury, but to the treasurer of state as “custodian”?
 

 Again examining the Constitution, we find no limitation which precludes such a method of payment, and, the presumption being in favor of the constitutionality of the instrument, we overrule this
 
 *628
 
 objection. The tax being a state tax, expended for the benefit of the various parts of the state, and for state expenses, Article XII, Section 4, which requires that state taxes shall defray the expenses of the state, is not violated.
 

 Plaintiff in error next urges that the one-half of the taxes turned over to the county treasurers constitutes a local tax, not imposed by a municipality, under its municipal corporation laws and ordinances, nor by a county, under its right to impose a tax, but imposed arbitrarily by the state, compelling the municipality or county to consent to the imposition of the tax, and to accept the money raised as directed by the state.
 

 Plaintiff in error therefore urges that this part of the statute violates the constitutional rights of municipalities and counties to exercise their own desires as to what taxes should be raised, for what purposes they should be raised, and in what manner they should be expended, and cites Article XII, Section 4, Article XVIII, Sections 2, 3 and 13, and Article X, Section 7, in support of its contention.
 

 Article XIII, Section 6, provides for the organization of cities by the General Assembly, and recognizes their power of taxation.
 

 Article XVIII, Section 2, provides that general laws shall be passed to provide for the incorporation and government of cities and villages.
 

 Article XVIII, Section 3, is the section which gives municipalities authority to exercise all powers of local self-government, and Article XVIII, Section 13, provides for the passage of laws to limit the powers of municipalities to levy taxes and incur debts for local purposes.
 

 
 *629
 
 We fail to see the slightest application of Article XIII, Section 6, Article XVIII, Section 2, and Article XVIII, Section 13, to this problem. Moreover, we hold that there has been no usurpation here by the Legislature of a power to levy a tax in whole or in part for the benefit of home rule municipal corporations and counties, and hence no violation of Article XVIII, Section 3, because of the fact that the tax is a state tax levied by the state, for the benefit of the state. The same holding disposes of the contention that the law violates Article X, Section 7, which is the constitutional provision which gives to the commissioners of counties and trustees of townships, and similar boards, such power of local taxation, for police purposes, as may be prescribed by law.
 

 Finally, plaintiff in error claims that the Legislature cannot delegate to automobile manufacturers the power to determine the rate or the amount of the tax on automobiles. This argument comes with strange emphasis from a litigant who has just attacked the ®. A. E. formula on the ground that horse power, under that formula, differs from the manufacturers’ rated horse power.
 

 We cannot agree with the contention that in determining the gross weight of vehicle and load the Legislature has delegated to any private person the right to determine the rate when it provides that the manufacturers’ rated carrying capacity shall be added to the weight of the vehicle fully equipped. Section 6293, General Code.
 

 It is the Legislature which has determined the rate and the amount of the tax, and if, in the calculation of the rate, it has permitted the secretary
 
 *630
 
 of state to use the manufacturers’ rated capacity-in calculating the rate, in that respect it has not exceeded its constitutional power. If injustice is done by this provision, a remedy therefor, as for every other measure in this act, exists with the state Legislature.
 

 Plaintiff in error also claims that the entire acts, 108 O. L., 1078, 108 O. L., 1165, and 110 O. L., 211, are unconstitutional. Since its specific contentions as to these statutes have proved untenable, this contention also is overruled. Judgment will therefore be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Jones, Matthias,* and Conn,'JJ., concur.