**STATE ex LAMPSON v COOK, Auditor, et**

Ohio Appeals, 7th Dist, Ashtabula Co

Decided April 8, 1932

Wm. W. Weir, Warren, F. J. Bishop, Andover, and Stephen T. Perry, Jefferson, for plaintiff.

Gilbert Bettman, Atty. Gen., Columbus, Wm. J. Ford, Columbus, and Howard M. Nazor, Pros. Atty., Jefferson, for defendants.

POLLOCK, J.

If the contention is true that the amendment voted upon as a single amendment contains three separate propositions to be submitted to the voters, the contention of the relator is correct.

This provision, directing the mode of submitting amendments to the Constitution, is mandatory, and must be substantially complied with in order that the amendment may be constitutional. **State ex Greenlund v Fulton, Secy. of State, 99 Oh St 168, 124 NE 172.**

The amendment of this section which was submitted to the voters at the general election in the fall of 1929 was carried by a majority of something like 200,000. This action was not instituted until after the electors had expressed their desire at the polls in regard to this amendment.

Courts should, after the amendment has been adopted, be slow to declare the amendment unconstitutional on technical grounds unless the substantial requirements of the Constitution have been violated in the submission.

Judge Donahue, in the case just referred to, on **page 213 of 99 Oh St, 124 NE 172, 184,** in his dissenting opinion, used the following language: "Technically it was an improper form of ballot, yet, if it was not misleading to the voter, there is no reason why it is not a substantial compliance with the constitutional and statutory requirements." This was a dissenting opinion, and, of course, not binding upon this court, but it appeals strongly to the judgment of this court in considering technical objections to the proposition submitted.

But the further question occurs: Was the amendment improperly submitted? The language of the Constitution is: "When more than one amendment shall be submitted." It is only where there is more than one amendment submitted that the amendments are required to be submitted separately to the voters in order to enable them to vote "yea" or "nay" on each amendment. The amendment of **§2 of Article XII** was in reference to the taxing laws of the state. It was intended by the amendment to change what had been commonly known as the uniform rule of taxation in this state, and gave to the legislature the authority to determine the mode of taxation. Both §2 and §3 applied to the uniform rule of taxation, so that there was only one subject submitted to the electors in that amendment. The two sections changed refer to the same subject-matter, and the new amendment also had reference only to that subject-matter.

While the question has never been before the Supreme Court of this state, yet in other states having similar propositions requiring amendments to the Constitution to be submitted to the electors, it appears that it has been quite frequently passed upon by the courts of those states.

The state of Wisconsin had a similar provision for submission of amendments to the Constitution to the voters. The Supreme Court of that state said: "It is within the discretion of the legislature to submit several distinct propositions to the people as 'one amendment', within the meaning of

said section 1, Art. 12, if such propositions relate to the same subject and are all designed to accomplish one purpose." State ex Hudd v Timme, Secy. of State, 54 Wis. 318, 11 NW 785.

The Constitution of Iowa had substantially the same provision as to the submission of amendments thereto. In referring to this provision of the Constitution, the Supreme Court of that state said: "But this does not mean that every proposed change shall necessarily be analyzed into its minutest component parts, and these separately submitted. All intended is that but one subject be dealt with in a single amendment. 'If,' as said in Lobaugh v Cook (127 Iowa, 181, 102 NW 1121), 'the amendment has but one object and purpose, and all else included therein is incidental thereto, and reasonably necessary to effect the object and purpose contemplated, it is not inimical to the charge of containing more than one amendment'." Jones v McClaughry, 169 Iowa, 281, 151 NW 210, 216.

The Supreme Court of Montana, construing a similar provision of submission of amendment to the Constitution, citing a number of authorities, said: "If, in the light of common sense, the propositions have to do with different subjects, if they are so essentially unrelated that their association is artificial, they are not one; but if they may be logically viewed as parts or aspects of a single plan, then the constitutional requirement is met in their submission as one amendment." State ex Hay v Alderson, Secy. of State, 49 Mont. 387, 142 P. 210, 213, Ann. Cas. 1916B, 39.

The Supreme Court of North Dakota, after referring to the provision of their Constitution, which is similar to the one in this state, and holding that on submission of more than one amendment to the Constitution it is mandatory that each receive a plurality, and that this requirement must be complied with in order to make the amendment constitutional, refers to what constitutes a plurality as follows: "As to what constitutes a plurality of amendments within a provision such as our §202, however, the attitude of the courts generally has been to adopt what is, in our judgment, properly termed a liberal and common-sense view." State ex City of Fargo v Wetz (on rehearing), 40 N. D. 299, 328, 168 NW 835, 846, 5 A.L.R. 731, referring to and citing many cases.

12 Corpus Juris, 690, in §26, announces the following principle: "Where distinct amendments are submitted together in violation of this requirement, the adoption of them is void. But this requirement necessitates the separate submission of such amendments only as have different objects and purposes, because several changes necessary to carry out a single purpose constitute only one amendment."

At least one-half of the states of the United States have substantially the same requirement for the submission of an amendment to the electors of the state. In the states where the question has been before the courts, a like principle has been announced as in the cases above.

We think that it is firmly established by judicial determination that where the amendment, although referring to more than one section, amends one and repeals another, if both refer to the same subject-matter, it is proper to include both in one amendment.

We think the amendment was legally submitted to the voters.

It is further urged that even if the amendment of §2, **Article XII**, was constitutionally adopted, the entire new taxing code is unconstitutional, as the uniform rule is still the constitutional requirement of this state, and the new law is a departure from that and adopts the classified system, assessing real estate at different percentages of value, and also classifying personal property, both tangible and intangible.

It is claimed that the General Assembly is a creature of the Constitution, provided by the electors of the state, and, as the General Assembly is created by the electors, its rights cannot rise higher or be greater than the rights of the electors themselves.

The relator calls attention to the provisions of Article II, §1e, which reads as follows: "The powers defined herein as the 'initiative' and 'referendum' shall not be used to pass a law authorizing any classification of property for the purpose of levying different rates of taxation thereon or of authorizing the levy of any single tax on land or land values or land sites at a higher rate or by a different rule than is or may be applied to improvements thereon or to personal property."

And relator says that at the same time this section was adopted, **Article I, §20** was in effect, and still is. This article reads as follows: "This enumeration of rights shall not be construed to impair or deny others retained by the people; and all powers, not herein delegated, remain with the people."

At the same time **Article II, §1**, was adopted. It reads:

"The legislative power of the state shall be vested in a General Assembly consisting of a senate and house of representatives but the people reserve to themselves the power to propose to the general assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote as hereinafter provided. They also reserve the power to adopt or reject any law, section of any law or any item in any law appropriating money passed by the general assembly, except as hereinafter provided; and independent of the general assembly to propose amendments to the constitution and to adopt or reject the same at the polls. The limitations expressed in the constitution, on the power of the General Assembly to enact laws, shall be deemed limitations on the power of the people to enact laws. * * *

"The people also reserve to themselves the legislative power of the referendum on the action of the General Assembly ratifying any proposed amendment to the constitution of the United States.

"No such ratification shall go into effect until ninety days after it shall have been adopted by the General Assembly. When a petition signed by six per centum of the electors of the state as is provided for a referendum petition on laws passed by the General Assembly shall have been filed with the Secretary of State within ninety days after said ratification by the General Assembly, ordering that such ratification be submitted to the electors of the state for their approval or rejection, the Secretary of State shall submit to the electors of the state for their approval or rejection said ratification in the manner provided for the submission by referendum of a law passed by the General Assembly. * * *"

The relator claims from these sections that it is plain that the people intended to place themselves on an equality with the General Assembly as to the legislative power, allowing it to rest equally in the hands of the people and the General Assembly. If this be correct, it must be inferred from the general tone and spirit of the Constitution. It is not provided by the words of the Constitution. **Article II, §1,** provides: "The legislative power of the state shall be vested in a general assembly consisting of a senate and house of representatives. * * *"

So that the people have delegated to the General Assembly the legislative power of the state, and it can only be taken away from the General Assembly or modified by an express provision in the Constitution,

"It will be observed, that the provision is not, that the legislative power, as conferred in the constitution, shall be vested in the General Assembly, but that the legislative power of this state shall be vested. That includes all legislative power which the object and purposes of the State government may require, and we must look to other provisions of the constitution to see how far, and to what extent, legislative discretion is qualified or restricted. * * * The power of taxation is included in the legislative power." **Baker v City of Cincinnati, 11 Oh St, 534, 542.**

"The general grant of legislative power vested in the General Assembly by **Article II, §1, of the Constitution,** includes the power to collect revenue for public purposes, and the limitations on the exercise of this power are to be found in other provisions of that instrument, and in the constitution of the United States." **Western Union Telegraph Co. v Mayer, Treas., 28 Oh St 521.**

Again, the Supreme Court, in referring to the power of taxation, says in **Saviers v Smith, Secy. of State, 101 Oh St 132, 128 NE 269:** "The power to tax is an attribute of sovereignty, and in this state is included in the general legislative power which is conferred by **§1 of Article II, of the Constitution,** upon the General Assembly without limitation."

**8 Ohio Jurisprudence, 138, §38,** says: "It is at present a generally accepted principle of constitutional law that the courts are not at liberty to declare an act void because it is opposed to the spirit supposed to pervade the Constitution, but not expressed in words. Courts cannot nullify an act of legislation on the vague ground that they think it repugnant to a general latent spirit, supposed to underlie the Constitution, but which neither its terms nor its implications clearly disclose."

The same principle is thus referred to in the next following section: "As shown above, well-settled rules of construction forbid courts from assuming the liberty of declaring an act void because, in their opinion, it is opposed to a spirit supposed to pervade the Constitution, but not expressed in words. An essential corollary to this proposition is that, before a statute can be declared unconstitutional, it must be violative of some express, specific, or particu-

lar provision of the written Constitution."

It is further urged that even if the Constitution does now give the Legislature power to provide for a classification of taxation, it cannot classify as this law does, for it violates practically every constitutional limitation by providing for taxation for municipal corporations, and refers to §3, **Article XVIII, of the Constitution:** "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

**Sec 13 of Article XVIII of the Constitution provides:** "Laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes. * * *."

It is claimed that new §5638, GC (114 Ohio Laws, p. 722), "does not purpose to limit the power of municipalities to levy taxes and incur debts for local purposes, but seeks actually to exercise that power itself."

Neither of these constitutional sections explicitly or directly provides that the Legislature cannot provide by general taxation for municipalities.

Much that has been said in considering the former proposition applies equally to this objection.

In addition to what has been noted, the Supreme Court said in **Miller v Korns, Aud., 107 Oh St pages 287, 295, 140 NE 773, 775:** "To the effect that a constitutional provision that taxes shall be uniform applies only to their levy and assessment, and not to the expenditure and distribution of money raised by the tax, are the following cases: Kerr v Perry School Township, 162 Ind. 310, 70 NE 246; Holton v Board of Com'rs of Mecklenburg County, 93 N. C. 430; and Mitchell v Lowden, Governor, 288 Ill. 327, 123 NE 566."

Again, in the same case, it is said at page **296 of 107 Oh St,** 140 NE 773, 776: "Moreover, it is established in this state that a tax law is uniform in operation if the tax is uniformly laid. Proposition 4 of the syllabus in **State ex Donahey, Auditor of State v Edmondson, County Auditor, 89 Oh St 93,** 105 NE 269, 52 L.R.A. (N.S.) 305, Ann. Cas. 1915D, 934, is a specific holding upon this point. In this case on page **114 of 89 Oh St,** on page 275 of 105 NE (52 L.R.A. (N.S.) 305, Ann Cas. 1915D, 934), Judge Donahue makes the statement that follows:

Again, the Supreme Court said, in **Rail-road Co. v Commissioners, 48 Oh St at page 249, 27 NE 548:** "Where a tax is levied for a public purpose, and the rule of equality has been observed in making the levy, its payment cannot be defeated by showing that no direct, or pecuniary, benefit will accrue to either the property, or its owner, from the proposed expenditure of the funds raised by the tax."

It will be seen from these authorities that if the tax is uniformly levied, its expenditure will not defeat the existing law. The constitutional provisions relating to assessment and collection of taxes have no application to distribution of the proceeds of the tax. Cooley on Taxation (4th Ed.), Vol. 4, §1813: "After taxes have been collected, their apportionment and distribution is largely regulated by statute. Distribution is separate from and independent of the levy of the tax, so that the validity or invalidity of the former does not affect the latter. For instance, an error in a tax warrant as to the method of distribution of the taxes does not affect the validity of the tax itself. Constitutional provisions relating to the 'assessment' and 'collection' of taxes have no application to a distribution of the proceeds of the tax."

This question was before the Supreme Court of this state in the case of **Fisher Bros. Co. v Brown, Secy. of State, 111 Oh St 602,** 146 NE 100, which was an attack against the right of the Legislature to provide, as in §6292 GC, for the licensing of motor vehicles. The question was raised that it was unconstitutional because a part of the money so raised by the state was distributed to the municipalities; the Supreme Court holding that such distribution did not render the law unconstitutional. We think the state had a right to levy a tax uniformly over the state, and that the act is not rendered unconstitutional by the provisions requiring a portion of such tax to be distributed to the municipalities of the state.

It is next urged that the new tax law is unconstitutional with respect to the classification; that it is elementary that it must operate so as to give every individual equal protection of the law.

We agree with this proposition that every citizen has a right to equal protection of the law, but this does not prevent the classification of property for taxation.

It is urged that the classifications adopted are unreasonable and unjust; that there is no reason for the different classifications.

The Legislature, or taxing authorities

have very wide latitude in determining the classes of property that should be exempted, and also the different rates and classes of taxation. In the absence of constitutional provisions to the contrary, the state may single out certain classes of objects for taxation, leaving other classes exempt or taxed at a different rate, or in a different manner. Cooley on Taxation (4th Ed.), vol. 1, §272.

Again, the same work, in §249, provides: "It does not require equal rates of taxation on different classes of property, nor prohibit unequal taxation so long as the inequality is not based upon arbitrary classification. Legislation which, in carrying out a public purpose, is limited in its application, does not violate the provision if, within the sphere of its operation, it affects alike all persons similarly situated."

This work further says, in §332: "Classification, if reasonable, for purposes of taxation, is not precluded by the Fourteenth Amendment of the Federal Constitution in so far as it relates to equal protection of the laws. In fact, the power to classify is undisputed, so far as the federal amendment relating to equal protection of the laws is concerned, and the only question is whether the classification is a proper classification. All that 'equal protection of the laws' requires is that all in the same class shall be treated alike."

The Supreme Court of the United States, in the case of Bell's Gap Rd. Co. v Pennsylvania, 134 U. S. 232, 237, 10 S. Ct. 533, 535, 33 L. Ed. 895, in referring to the classification of property for taxation, says: "All such regulations and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their constitution. But clear and hostile discrimination against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition."

The question of classification was before the Supreme Court in the case of Fisher Brothers v Brown, supra. The first proposition of the syllabus reads: "The Legislature, having the power of classification, has also the power to select the standard on which to base the classification." And, again, in the opinion, on page 620 of 111 Oh St, 146 NE 100, 105, it is said that:

"It is the Legislature, not the court, which is invested with the power of selecting the standard upon which to base the classification.

" 'Granting the power of classification, we must grant government the right to select the differences upon which the classification shall be based, and they need not be great or conspicuous.' Citizens' Telephone Co. of Grand Rapids v Fuller, Auditor General, 229 U. S. 322, 33 S. Ct. 833, 57 L. Ed. 1206.".

It appears from these authorities that the courts cannot declare an act of the Legislature unconstitutional because of the difference in classification, unless such classification is arbitrary and unreasonable, or unless it results in inequality so great as to amount to discrimination.

We cannot say, under these principles, that this act is unconstitutional, especially since it is the first enactment of the Legislature under the new scheme of taxation by classification. Courts should be reluctant to hold that the law is unconstitutional. No doubt it will be found that there are inequalities in the operation of this law, but it is better to leave it to the Legislature to remedy such, if there are any, rather than leave it to the courts at this time to hold the law unconstitutional. No taxation scheme by classification can be so perfect as to affect each class of property, and likewise persons, with exact equality. This principle was recognized by the Supreme Court of the United States in Tappan, Collector, v Merchants' Nat'l Bank, 86 U. S. (19 Wall.) 490, 504, 22 L. Ed., 195, as follows: "Absolute equality in taxation can never he attained. That system is best which comes the nearest to it."

There are other objections urged to this new taxation law, but we think that we need not spend any further time in referring to them. They at least do not rise to the height of rendering the act unconstitutional.

The demurrer to the petition is sustained, and unless it is desired to amend the petition, such action is dismissed.

Reaching the conclusion we have, we do not think it necessary to determine whether mandamus was the proper action to determine the question raised in the petition.

Petition dismissed.

ROBERTS and FARR, JJ, concur.