THE STATE for the use, etc., v. HEROD.

**Municipal corporation:** STREET RAILWAYS: LICENSE. The grant of an exclusive right, by city ordinance, to a street railway company, to construct, operate and maintain over the streets of the city a street railway for the carriage of passengers, containing no provision in relation to the payment of any fee or license, does not exempt the company from paying a license fee provided by a prior ordinance to be paid by all persons engaged in carrying passengers.

*Appeal from Dubuque Circuit Court.*

MONDAY, JUNE 20.

THE 19th clause of section 7 of the "act revising and consolidating the laws incorporating the city of Dubuque," etc., approved January 28, 1857, (Laws of 1857, p. 348), provides that the city council shall have power "to license, tax and regulate hackney carriages, omnibusses, wagons, carts, drays and all other vehicles, and porters, and fix the rate to be charged for the carriage of persons, and for the wagonage, cartage, drayage or porterage of property."

The council passed "an ordinance in relation to licenses," one section of which provided that "no person shall, within the limits of the city, use any hack, carriage,

omnibus or other vehicle for the purpose of carrying passengers from one place to another  *  *  *  for hire, unless duly authorized b y a license for such conveyance, under a penalty of five dollars for each day ; and for a license for every such vehicle he shall pay to the city the sum of five dollars."

After this, an ordinance was passed "authorizing and regulating street railways," etc.   This granted to the "Dubuque Street Railway Co.," the exclusive right to construct, operate and maintain, over the streets of said city, street railways for carrying passengers, etc., for the term of twenty years, upon certain conditions and restrictions, in such ordinance contained.   The city council reserves therein the right to make all necessary and usual police regulations concerning the operation and management of said street railway ; but there is nothing said about a license, a tax, a license fee, nor anything of the kind.

The defendant is the superintendant of this company, and by stipulation is entitled to any defense which said corporation might make, and none other.

This action was brought to determine whether the railway company was bound to pay the license fee provided for in the "Ordinance in relation to licenses."   The court below sustained plaintiff's view, and defendant appeals.

*H. A. Wiltse* for the appellant.

*E. McCeney* for the appellee.

WRIGHT, J.—It seems to us, that to state this case is to decide it.  The special privileges granted to and conferred upon the railway company did not exempt it from liability to pay a license fee for each vehicle by it used on the line of its road.   It might as well be claimed that the property of the company was not liable for its due proportion

of the *taxes* imposed by the city, because of the rights conferred by the ordinance. An exclusive right conferred upon a company to run its omnibus lines upon certain streets, without more, would not dispense with the license fee provided in a prior ordinance. Nor does this company stand in any better situation.

The fee demanded is not to tax, but a sum imposed in virtue of the police power of the city, or that which relates to the orderly management of its affairs. The power to license and regulate carries with it the right to require the payment of a sum in consideration of said license. *Johnson* v. *City*, Legal Intelligencer 1869, p. 269. The sum fixed is not unreasonable, and scarcely if any more than would be necessary to pay the clerk hire connected with the usual registry, etc., of these and other vehicles. And whether the city could do more than this, we need not now decide.

The ordinance authorized the construction of the road, and the placing of the coaches thereon. That is to say, but for this ordinance, or some similar grant of power, the company would have had no right to put down its track along the streets, nor to run its coaches thereon by horse or other power. The owner of an omnibus, hack or carriage needs no such special grant or authority. The special grant is, however, not a *license* within the meaning of the ordinance on that subject. By this we do not mean that the company is required to obtain any further authority in writing, in the shape of a general license, or otherwise, before entering upon its work. And yet it is not a license in such a sense as to exempt from liability for the fee for which this action was brought. But though it constituted a license this fee could be exacted. For the mere obtaining the power to run a carriage, omnibus or street car, would not deprive the city of the right to collect the fee, unless, of course, there should be some-

thing in the contract or agreement denying such right. Now it is conceded that the grant to the company in this instance constituted a contract, binding alike upon both parties. The city could not, without the consent of the company, ingraft upon it new conditions, unless the right to do so is reserved either expressly or impliedly, in this or some other prior city legislation, in the light of which it must be supposed this franchise was accepted. This proposition waives the question of the right to fix a license fee by *subsequent* ordinance. Such a case is not before us. The charter (so to speak) was taken with the knowledge of the liability upon the part of all persons running their carriages, hacks and coaches for hire to pay this fee, and the exaction of it is not the imposition of a new or unauthorized burden or condition. The contract is in no sense impaired thereby.

Affirmed.