## BLEON v. EMERY, Sheriff.

No. 3849.   Decided September 18, 1922.   Rehearing denied October
4, 1922.   (209 Pac. 627.)

1. LICENSES—THAT AUTOMOBILE LICENSE LAW IS BOTH A REGULA-
    TORY AND REVENUE MEASURE DOES NOT AFFECT ITS VALIDITY.  The
    fact that Automobile License Law, as amended by Laws 1919,
    c. 78, and Laws 1921, cc. 81, 82, 83, is both a regulatory and a
    revenue measure, in no way affects its validity.

2. LICENSES—UPON "TRANSFER" OF OWNERSHIP OF AUTOMOBILE REGIS-
    TRATION EXPIRES.   Automobile License Law, as amended by
    Laws 1919, c. 78, and Laws 1921, cc. 81-83, providing (section
    3974) that, "upon the transfer of ownership of a vehicle, its
    registration shall expire," includes both a "transfer" by ex-
    change as well as by sale, and where a transfer of ownership
    was effected by exchange, the registration expired, even though
    the automobiles were of the same horse power.

3. LICENSES—AUTOMOBILE   LICENSE   LAW   NOT   DISCRIMINATORY.
    Notwithstanding that one who sells or transfers his motorcar
    or who may have occasion to purchase another in place of one
    destroyed or stolen must pay an additional registry fee, al-
    though he uses but one car at a time, yet the law works uni-
    formly and affects all in the same way who may sell or ex-
    change cars, and is not discriminatory.

On Application for Rehearing.

4. HABEAS CORPUS—ERRORS OF CONSTRUCTION OR JUDGMENT NOT RE-
    VIEWED IN HABEAS CORPUS PROCEEDING.   Mere errors of construc-
    tion or judgment, whether committed by a court or by some
    board or officer, cannot be reviewed in a habeas corpus pro-
    ceeding.[1]

Original application by Sylvan Bleon for a writ of habeas

---

[1] Bruce v. East, Sheriff, 43 Utah, 327, 134 Pac. 1175.  Long v.
Emery, 60 Utah, 563.

corpus against C. Frank Emery, as Sheriff of Salt Lake County.

DENIED, and petitioner remanded to custody.

*H. L. Mulliner,* of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *Wm. A. Hilton* and *J. Robert Robinson,* Asst. Attys. Gen., for defendant.

FRICK, J.

The plaintiff was charged in the city court of Salt Lake City with having violated the provisions of title 69, Comp. Laws Utah 1917, constituting sections 3970 to 3990, and with violating that title as amended by chapter 78, Laws Utah 1919, and by chapters 81, 82, and 83, Laws Utah 1921. Reference will hereinafter be made to the particular provisions of the foregoing chapters which are in question here. A warrant was duly issued upon the complaint filed as aforesaid, and plaintiff was arrested and taken into custody, and was thus restrained of his liberty by the defendant as sheriff of Salt Lake county. After having been arrested and being in custody as aforesaid plaintiff filed his petition in this court for a writ of habeas corpus, which was duly issued, and to which the defendant has made return in which the reasons why plaintiff was taken into custody and is being restrained of his liberty are duly set forth. The matter was submitted to this court upon the allegations of plaintiff's petition and the return of the defendant, and upon the printed briefs filed by the respective parties.

The theory upon which plaintiff bases his right to a discharge in this proceeding is tersely stated by his counsel in his printed brief in the following words:

"Plaintiff has brought his petition for a writ of habeas corpus based upon the ground that he cannot be compelled and is not required under the Constitution of the state of Utah to pay another license fee for the privilege of operating a touring car of the same horse power as that for which he has already paid the annual tax."

Plaintiff also urges that by being compelled to pay further registration fees each time he disposes of one car and obtains another, or if he exchanges or trades one car for another, he is discriminated against and is deprived of the equal protection of the law.

Our motor vehicle law, as stated above, is found in the several chapters to which we have referred, and covers the whole subject of regulating and registering automobiles or motor vehicles and the payment of registration fees, etc. The sections of the motor vehicle law are very numerous, and the provisions thereof are so intermingled that, in the interest of brevity, we will merely state the effect of the provisions that are involved here, rather than to copy the sections in which they are contained.

The motor vehicle act provides that every owner of an automobile shall, before the 1st day of March in each year or before he shall operate his motor vehicle, register the same in the office of the Secretary of State, and "obtain a license to operate the same" for the ensuing year. The statute then specifically provides the manner in which application for registration of motor vehicles shall be made, and that upon such registration a license or certificate shall issue to the applicant, and numbered plates shall be delivered to him, which shall be attached to the motor vehicle thus registered. By the Motor Vehicle Act all motor vehicles are classified, and the fees for registration, etc., are determined and fixed in accordance with the horse power of the engine used for propelling the motor vehicle, ranging from $10 for a motor vehicle which is used "only for pleasure" to $25 for motor vehicles that are used for general purposes. Motor trucks are classified according to the tonnage capacity, and the registration fees range from $20 upwards. Under the law as it stood prior to 1921, in case the owner of a motor vehicle sold or transferred the same to another, the fact had to be reported to the Secretary of State, and that official, upon receiving satisfactory evidence of the sale or transfer, was required by the act to collect a transfer fee of $1 and the purchaser could then, without further payment, use the car obtained by him

by purchase or in exchange for the unexpired part of the year. The law, however, was amended in many particulars in 1921, which amendments are found in chapters 81, 82 and 83, Laws Utah 1921. In the law as amended the provision with respect to the transfer fee was omitted, and the law as amended by chapter 81 aforesaid provides that—

"Upon the transfer of ownership of a vehicle its registration shall expire, and it shall be the duty of the original owner to notify the Secretary of State immediately the name and address of the new owner or dealer, and return the registration card and license plates to the Secretary of State."

It is further provided that the Secretary of State "shall not register any vehicle or issue any certificate or registration thereof or numbered plates therefor, unless and until the owner thereof shall have complied with the provisions of this act." In another section (section 3973, as amended by chapter 82) it is provided that—

"On and after the first day of September of any year the fee for such registration shall be one half of the amount of the annual registration fee."

There are numerous other provisions of the motor vehicle law, which, if construed together, as they must be, make it very clear that the law was intended as a regulatory measure to protect the owners of motor vehicles, so far as that can be done by the identification of each owner, as well as of each vehicle, from fraudulent transfers and from thefts, etc.; that it was also intended as a revenue measure, to raise funds for the construction and maintenance of paved, macadamized, and other roads. The fact that the statute is both a regulatory measure and a revenue measure in no way affects its validity. In Berry, Automobiles (3d Ed.) § 110, the author says:

"A regulatory measure may also be a revenue measure without being objectionable on that account."

In order that proper roads might be constructed and maintained, the Legislature authorized the issuance of so-called road bonds and $7,000,000 worth of such bonds have been issued and the fees derived from the registration fees aforesaid, after defraying the expenses incident to the registration

of motor vehicles, etc., are set apart in a fund called the "Motor Vehicle Fund," which is exclusively devoted to the payment of interest as it accrues, upon the road bonds aforesaid and to create a sinking fund for the payment of the principal thereof as the bonds mature.

From what has been said it is clear that plaintiff's objection to the motor vehicle law is that, after he had duly registered his motor vehicle and had paid the annual registration fee, and he then exchanges or trades his registered motor vehicle for another of the same horse power, he must again pay the registration fee for the motor vehicle he has acquired as aforesaid, notwithstanding that he has paid the full annual fee for the car originally owned by him. This, no doubt, is precisely what the law requires of him. Counsel for petitioner in his reply brief, however, vigorously insist that, although a person who sells his motor vehicle and buys another must pay the additional fee required by the statute, yet that in case of an exchange of vehicles of equal horse power by the owners thereof such is not the case. This contention is based upon the theory that, the owner having paid one registry fee, the right to use a vehicle of the same horse power continues during the whole year, and thus, where there is merely an exchange of vehicles of the same horse power by the owners thereof, each one retains the right in his license to operate the vehicle to the end of the registry year, while such is not the case where one buys another vehicle. In making this contention it seems to us counsel clearly ignores the very language of the statute. As already pointed out, the statute says, "Upon the *transfer of ownership* of a vehicle its registration shall expire." (Italics ours.) Counsel would have us interpret the statute as though it read "upon the sale of a vehicle," etc. In using the word "transfer" the Legislature intended to and did include both a transfer by exchange as well as one by sale. We must assume that if the Legislature had intended to limit the effect of the statute to sales or new purchases, only appropriate language to effectuate that purpose would have been used, and not the sweeping language that is used. Then, again, it is not easy to under-

stand how the registration of vehicles can be said to have expired upon transfer of ownership, and yet remain in force after such transfer. If the registration of a vehicle expires upon the transfer of ownership, it necessarily **2** expires whether such ownership is transferred by means of purchase or by means of an exchange. The ownership of a vehicle is transferred by an exchange between A. and B. precisely as it would be if B. had purchased a vehicle from A. The statute therefore covers one method of transfer precisely the same as it does the other, and the courts can make no distinction. It is utterly incomprehensible to the writer how it can successfully be urged that the registration of every motor vehicle expires upon the transfer of ownership, but, notwithstanding that fact, if the ownership be transferred by means of a trade or exchange of vehicles, it does not expire, but continues in force. No doubt, in case a transfer occurs after the 1st day of September, only one-half of the registry fee must be paid. The law requiring a new registry and the payment of a registry fee in case of the transfer of ownership of a vehicle is undoubtedly based upon the fact that—

"An automobile or chauffeur's license is personal to the one to whom it is issued, and it cannot be delegated or assigned to another." Berry, Automobiles (3d Ed.) § 100.

The author, in the same section, further says:

"Where a law imposing a license tax or registration fee on automobiles provides no manner of transferring such license, the license cannot be transferred; and when a car which has been licensed is sold the purchaser must secure its registration anew."

The precise question involved in the case at bar was presented to the Alabama appellate court in the case of *Foshee* v. *State*, 15 Ala. App. 113, 72 South. 685, where it was held that—

"* * * The purchaser of a car on which a license tax has been paid must pay a license tax for operating a car for the current year, and cannot avail himself of the payment of the license tax for the year by his vendor."

It is further held:

"A license is not a contract between the state and the licensee,

but is a mere personal permit which cannot be transferred or sold."

We may add that what is meant by the court is that unless there is authority under the law to make a transfer of a license the license expires with the transfer of the vehicle to which it is attached. The Alabama statute originally authorized the transfer of the license by paying a transfer fee, precisely as was the case under our statute. That law was, however, amended, and, as amended, no provision was made authorizing a transfer, and hence the court held that a new registry fee had to be paid in case ownership was changed. For a discussion of the propositions involved see Berry, Automobiles (3d Ed.) §§ 103-108.

The courts have had frequent occasion to construe motor vehicle registration laws, and acts similar to ours have frequently been held not to be vulnerable to the objections urged by counsel against our Motor Vehicle Act. *In Re Hoffert*, 34 S. D. 271, 148 N. W. 20, 52 L. R. A. (N. S.) 949, the court, in the course of the opinion, said:

"It is a well-known fact that motor vehicles, and especially when driven at high speed, are far more destructive of roadways than animal propelled vehicles. Their use materially increases the cost of maintaining the public roads; and it is neither unreasonable nor unjust that they should be required to pay, or help to pay, this increased expense. The public highways are wholly under the control and supervision of the Legislature. The Legislature could, if it believed it would subserve the best interests of the public, exclude motor vehicles from the use of the public highways altogether; and certainly it may call upon the users of such vehicles to contribute to the expense imposed upon the public by their use. Similar statutes have been upheld on this ground by other courts, and we fully agree with the conclusions reached by those courts. *Kane* v. *State*, 80 Atl. 453, Ann. Cas. 1912D, 237; *Cleary* v. *Johnston*, 79 N. J. Law, 49, 74 Atl. 538; *Mark* v. *District of Columbia*, supra."

In *Kane* v. *State*, 81 N. J. Law, 594, 80 Atl. 453, L. R. A. 1917B, 553, Ann. Cas. 1912D, 237, it is said:

"The charging of an annual sum for the use of its highways by automobiles, instead of a mileage fee, is clearly a matter within the discretion of the state. No constitutional objection lies in the way of the legislative body prescribing *any mode of measurement to determine the amount it will charge for the privilege it bestows.*" (Italics ours.)

It is further said:

"The imposition is a license or privilege tax charged in the nature of compensation for the damage done to the roads of the state by driving these machines over them, and is properly based, not upon the value of the machine, but upon the amount of destruction caused by it."

The case just quoted from was affirmed by the United States Supreme Court in 242 U. S. 160, 37 Sup. Ct. 30, 61 L. Ed. 222.

It is further pointed out by the New Jersey court in the case just referred to that the state might impose a fee to be paid by the owners of automobiles as toll for the use of the highways. It is well known that such was frequently done in the past for the use of turnpikes, bridges, etc., and that full power is vested in the sovereign state to impose such tolls. It may, however, also devise substitute measures to raise funds to defray the cost of constructing roads and the expenses incident to maintaining them. That is precisely what is done by the motor vehicle law of this state.

The question of imposing fees for the registration of motor vehicles and their use upon the highways has also been thoroughly considered by the Supreme Court of California in the *Matter of Application of Schuler,* 167 Cal. 282, 139 Pac. 685, Ann. Cas. 1915C, 706, where provisions similar to those in our Motor Vehicle Act were upheld. While the following cases do not directly pass upon the precise question presented by counsel in this case, they, nevertheless, are illuminative and instructive, and clearly hold that acts similar to our Motor Vehicle Act are not vulnerable to the objections urged by counsel. *Ex parte Dees* (Cal. App.) 189 Pac. 1050; *Jackson* v. *Neff,* 64 Fla. 326, 60 South. 350; *Park* v. *City of Duluth,* 134 Minn. 296, 159 N. W. 627; *State* v. *Becker* (Mo. Sup.) 233 S. W. 54.

The objection that the act is discriminatory is not well founded. While it is true that one who sells or transfers his motorcar, or who may have occasion to purchase another in place of one destroyed or stolen, must pay an additional registry fee, although he in fact uses but one car at the time, yet the law operates uniformly and affects all in the same

way who may sell or exchange cars. There is therefore no discrimination as that term is understood and applied. While it is true that in so far as the law exacts the payment of a full registration fee from all those who may exchange cars, or who may be required to replace one that has been destroyed or stolen, may be harsh and may impose a burden that by a proper transfer fee might be avoided, yet that is not a sufficient reason for holding the law invalid. Courts can strike down laws only in case they are clearly repugnant to some constitutional provision or are clearly and manifestly discriminatory. This is especially the case where, as here, the law that is assailed relates to the police and taxing powers, which are two of the highest attributes of sovereignty the exercise of which belongs to the Legislature, which is the direct agency of the people. Unless, therefore, such a measure is clearly repugnant to some constitutional provision or is manifestly discriminatory, the question of getting relief against a burdensome law must be addressed to the Legislature, and not to the courts.

We desire to add that we have carefully considered the authorities cited by plaintiff's counsel, but, as there is nothing in them contrary to the principles herein announced, we refrain from referring to them further.

In view of what has been said the plaintiff has not been and is not illegally restrained of his liberty. It is therefore ordered that the plaintiff be, and he is hereby, remanded into the custody of the defendant as sheriff of Salt Lake county, to be held until released according to law. It is further ordered that the plaintiff pay the cost of printing briefs in this court.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.

On Application for Rehearing.

FRICK, J.

Plaintiff's counsel has filed a petition for a rehearing, in which he vigorously protests that the writer of the opinion

has misstated his position, and thus placed him "in a ridiculous position." It frequently occurs that counsel who suffer defeat in this court are betrayed into making somewhat strong statements in their petitions for rehearing. As a general rule, such statements are attributed to the zeal of counsel, and no comment is made upon them. In this case, however, in view of the emphatic statements of counsel, we cannot, in justice to this court, pass over the matter in silence.

Counsel, in his petition and argument for a rehearing, says:

"This plaintiff respectfully but emphatically protests against the case being decided and disposed of upon the theory or statement, contained in the opinion, that he makes or has ever made any such contention as the following, quoted from the opinion herein: 'Counsel for petitioner in his reply brief, however, vigorously insists that, although a person who sells his motor vehicle and buys another must pay the additional fee required by the statute, yet that in case of an exchange of vehicles of equal horse power by the owners thereof such is not the case.'

"The opinion at some length argues the proposition as set forth in this statement. We have never dreamed of making any such contention. There isn't the slightest basis in our briefs for assuming that we have made such, and it is humiliating to connect us with any such contention as this; and it disposes of the case without consideration of the real issue involved."

It will thus be seen that if counsel's conclusions are correct the writer has grievously erred in making the statement contained in the opinion, and the error should be corrected at the earliest possible moment. If, upon the other hand, counsel's conclusions are not sustained by the record, that fact should be made to appear.

The excerpt quoted from the opinion, and to which counsel seriously objects, was based entirely upon statements contained in counsel's reply brief. In that brief counsel took special pains to state his position, and after admitting that "an automobile license is personal to the one to whom it is issued" he makes the following specific statement:

"We agree that such license, being thus personal, does not pass to a vendee of an automobile by the common law or except by statutory permission. *We consequently agree that in the Long Case he must pay not only a new registration fee, but a license tax as*

*well*, since there is no provision in the 1921 statute for transfer of the license privilege to him. In fact, so far as the registration of a *car sold* is concerned, it is specifically provided in section 3974 (L. 1921, p. 218) that upon the 'transfer of ownership of a vehicle its registration shall expire.' "

In referring to the *Long Case*, 60 Utah, 563, (209 Pac. 631) in the foregoing statement counsel had in mind a case which was submitted with the case at bar and the decision of which follows this one. In that case the owner of the automobile, after paying the registry fee and obtaining the annual license, sold the one he had registered and purchased another, on which he was also required to pay a registry fee, while in the case at bar the owner of the automobile, after paying the registry fee and obtaining a license, exchanged or traded it for another of the same horse power, and he was also required to pay another registry fee. In the *Long* Case, therefore, another automobile was purchased and used in place of the one first registered, while in the case at bar two automobiles were exchanged after they had been registered. The ownership of the automobiles was therefore transferred in the one case precisely as in the other. In view of these facts it would seem that the statement contained in the opinion is not only correct in fact, but that when the statement is compared with the one in counsel's reply brief, which we have quoted, it also clearly reflects counsel's view of the matter. In the light of these facts further comment seems entirely unnecessary.

Moreover, counsel, in his petition for a rehearing, entirely ignores the fact that in view that the decision is rendered in a habeas corpus proceeding this court was restricted to the question of whether the statute is valid or invalid. It is elementary that mere errors of construction or judgment, whether committed by a court or by some board or officer, cannot be reviewed in a habeas corpus proceeding. 1 Bailey on Habeas Corpus, § 30; *Bruce* v. *East, Sheriff,*    4 43 Utah, 327, 134 Pac. 1175, and cases there cited. Notwithstanding that, counsel strenuously insist that he should prevail on what, in his judgment, constitutes an error of construction. If it were conceded, however, that such were

the case, he, nevertheless, could not prevail, since, in the judgment of this court, his construction of the statute is clearly untenable.

There is therefore no merit in counsel's contention, and hence the petition for a rehearing should be, and it accordingly is, denied.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.