## LEE *v.* THE STATE.

1. Section 8 of the act approved November 30, 1915, entitled "An act to provide for the annual registration and identification of motor-vehicles," etc. (Ga. L. Ex. Sess. 1915, p. 107), is not open to attack on the ground that it was not one of the subjects included in the Governor's proclamation convening the legislature in extraordinary session.

2. The title of the act is broad enough to authorize the provision making penal the use of a number-plate not furnished by the Secretary of State. This provision was germane to the object of the act, directly tending to make the provisions of the act effective.

3. The act is not unconstitutional upon the ground that it violates paragraph 1 of section 2 of article 7 of the constitution of this State, which provides that all taxation shall be uniform upon the same class of subjects and ad valorem on all property taxed.

4. The act is also challenged on the further ground that it undertakes to tax automobiles for the construction of public roads, and that there is no authority in the General Assembly of Georgia to tax personal property in order to raise a fund for the construction of public roads, and the act thereby violates the fourteenth amendment of the constitution of the United States, and paragraph 3 of section 1 of article 1 of the constitution of the State of Georgia, and also violates the provisions of paragraph 2 of section 1 of article 1 of that constitution. There is no merit in this contention, as the tax in question is not a property tax.

5. The ground of demurrer based upon the contention that the act and amendments thereto undertake to confiscate property in automobiles by taxation, without authority of law and in violation of the sections of the State and Federal constitutions referred to in the last preceding headnote, is without merit.

6. The provision directing that the funds raised shall be distributed among the several counties of the State in proportion to the public-road mileage outside the cities and incorporated towns, and that the fund can not be used on the roads in cities or incorporated towns, does not render the act violative of the fourteenth amendment of the constitution of the United States, or of paragraphs 2 and 3 of section 1 of article 1 of the constitution of this State.

7. The seventh ground of the demurrer is disposed of by what is said in the fourth and fifth headnotes above.

8. The act in question is not unconstitutional on the ground that it is in its essence a revenue law, and that the sum which will be collected from the tax imposed is largely in excess of any sum needed to carry out and enforce the law governing registration.

9. Certain grounds of contention attacking the law as unconstitutional, which were disposed of in ruling upon the demurrer, are restated in the special plea to the accusation, and it is unnecessary to restate them here. But in the special plea it is contended that "the automobile described in this case was the property of the City of Atlanta; was set

Motor Vehicles, 28 Cyc. p. 33, n. 72, 73.

Statutes, 36 Cyc. p. 944, n. 1; p. 1029, n. 25; p. 1032, n. 36; p. 1035, n. 52.

apart by said city to the department with which defendant is connected; that, at the time and place alleged, it was being used for the purpose of said department and in the interest of said city; that it was not used outside of said city; that said city and said department had no jurisdiction outside the limits of said city; that said automobile used none of the roads of said State outside of said city." The objection to the act upon the grounds here stated is virtually disposed of by the ruling in the case of *Tarver* v. *Albany*, 160 *Ga.* 251 (127 S. E. 856), and is without merit.

No. 5415. November 20, 1926.

Certiorari. Before Judge Howard. Fulton superior court. April 1, 1926.

*J. L. Mayson* and *C. S. Winn*, for plaintiff in error.

*Roy Dorsey*, solicitor, *George M. Napier*, attorney-general, *T. R. Gress*, assistant attorney-general, *John A. Boykin*, solicitor-general, and *J. W. LeCraw*, contra.

Beck, P. J.   J. T. Lee, a policeman in the employment of the City of Atlanta, was charged with operating on one of the public streets of the city an automobile having a license tag other than the one furnished by the Secretary of State. He was convicted in the criminal court of Atlanta, and sued out a writ of certiorari to the superior court, excepting to the refusal of the criminal court to sustain a demurrer filed to the accusation; also to the order of that court striking the special plea filed to the accusation, and to the verdict rendered by the judge acting without a jury in the case. His exceptions were overruled by the superior court, and he brought the case to this court for review.

1. In the petition for certiorari exception was taken to the overruling of the demurrer to the accusation upon which the defendant was tried in the criminal court of Atlanta. The first ground of the demurrer is that "the accusation is based upon the last sentence of section 8 of an act of the General Assembly of Georgia, approved November 30, 1915, being an act entitled 'An act providing for the annual registration and identification of motor vehicles,' etc., which act was passed during an extraordinary session of the legislature of this State under call of the Governor of the State, dated September 25, 1915, and said portion of said act is void and unconstitutional, because said sentence of said section of said act does not relate to any of the objects stated in the Governor's proclamation convening the legislature in said extraordinary session." We can not agree with the contention of

plaintiff in error that the portion of the act attacked has no relation to any of the objects stated in the Governor's proclamation convening the legislature in extraordinary session. Section 8 of the act reads as follows: "Every motor-vehicle or motorcycle, which is in use upon the streets and highways of the State, shall at all times display the number plate assigned to it; and the same shall be fastened on the rear of the machine, in a position so as not to swing, and shall be at all times plainly visible. No number-plates other than those furnished by the Secretary of State shall be used." And the last sentence of that section is, as will be seen by reference to it, "no number-plates other than those furnished by the Secretary of State shall be used." The proclamation of the Governor contained the following, as among the subjects to be considered in the extraordinary session: "To consider the question of amending the automobile license tax, authorized in the act approved August 19, 1913, amending an act approved August 13, 1910, and any other acts concerning the same, so as to secure the collection and disposition of said tax." The act approved August 19, 1913 (Acts 1913, p. 75), is an act "to amend the act approved August 13, 1910, being Act No. 478 of the Acts of the General Assembly of 1910, regulating the running of automobiles, and other vehicles and conveyances, propelled by steam, gas, gasoline, electricity or other power than muscular power upon the public and private roads of the State of Georgia, provide registration and numbering of the same," etc. And in this act last referred to there are sections containing enactments carrying out the purposes indicated in the title. Clearly the contention of counsel that the portion of the act of November 30, 1915, referred to above, has no relation to any of the objects referred to in the Governor's proclamation, is without merit.

2. The ruling made in the second headnote requires no elaboration. Where an act of the legislature prescribes certain acts to be done or to be refrained from by individuals or by classes of individuals, and the prescribed regulation is within the legitimate exercise of the police power by the State, it is not foreign to the subject of such an act to prescribe penalties for the violation thereof, and to enact other rules and regulations germane thereto which will have the effect of making the prescribed rules effective.

3. The act of November 30, 1915, under consideration, is not unconstitutional upon the ground that "it violates paragraph 1, section 2, article 7 of the constitution of this State, which prescribes that all taxation shall be uniform upon the same class of subjects and ad valorem on all property taxed, because: (a) The taxation of automobiles under said act of 1915 is not ad valorem, inasmuch as it taxes same according to horse-power. (b) Said taxation is therefore not uniform and ad valorem. (c) Said taxation is not uniform, because (1) many automobiles are excepted from taxation; (2) horse-power is not uniformity, because the same tax is levied on all automobiles having the rated horse power without regard to their value or whether new or old, or the extent of the use thereof on the highways; and (3) the attempted classification according to horse-power is purely arbitrary and fixed without regard to value or use, and there is no connection between or reasons for the classification of automobiles by horse-power except the arbitrary statements made in said act and amendments thereto. (4) Automobiles are not exempted from property tax, and hence are doubly taxed." The money payable and collectible for annual fees for the licenses provided for in this act is not an ad valorem tax, and does not fall within the provision of the constitution upon the subject of the uniformity of ad valorem taxes. Nor are any of the other objections appearing in this ground of the demurrer to the accusation meritorious. There is nothing novel in these questions. Similar questions have been considered by text-writers and decided by various courts of last resort in this country. See Berry on the Law of Automobiles (3d ed.), §§ 102-105, and numerous cases cited in support of the text.

Referring especially to the contention that the attempted classification according to horse-power is purely arbitrary and fixed without regard to value or use, and that there is "no connection between the reasons for the classification of automobiles by horse-power except the arbitrary statements made in said act and amendments thereto," we will only say that the classification does not seem to us to be "purely arbitrary." Hendrick *v.* Maryland, 235 U. S. 610 (35 Sup. Ct. 140, 59 L. ed. 385) ; Kane *v.* New Jersey, 242 U. S. 160 (37 Sup. Ct. 30, 61 L. ed. 222, Ann. Cas. 1912D, 237). "Classification of automobiles according to horse-power for the purpose of fixing the amount of the registration or license fee

is a reasonable and proper mode of classification; and a statute fixing the amount of the fee according to the horse-power of the vehicle, and not according to its value, is not invalid on that account, as the fee, in excess of the amount required for registration, etc., is a privilege tax charged in the nature of compensation for the damage done the roads of the State, and is properly based upon the amount of destruction caused by it. Classification according to horse-power is not violative of the 'due-process' clause of the constitution because it results in the imposition of a greater tax on one automobile than on another, for an automobile of high power is generally heavier and more destructive to roads than one of low power. Nor does a statute violate such clause because it provides for the determination of the horse-power of automobiles by the State department of engineering, where the owners are given the right to present their case to that department. The apportionment on a basis of horse-power has a direct and natural relation to the privilege granted, the use of the highway; and since the license relates to all persons in a class, and operates uniformly upon all therein, there is no unlawful discrimination." Berry on the Law of Automobiles (3d ed.), 123, 124. The United States decisions which we have last cited above are cited as authority for the text just quoted.

4-5. The rulings made in the fourth and fifth headnotes require no elaboration.

6. The 6th ground of the demurrer is as follows: "Said act provides that the funds raised from the taxation therein authorized is directed to be distributed among the several counties of the State in proportion to the public-road mileage thereof outside of cities and incorporated towns. Said fund can not be used on the public roads or streets of cities and incorporated towns, although such streets are public roads; and defendant says that said act is unconstitutional, because it is a taxation of and on automobiles owned and used in cities, for the improvement of public roads outside of said cities, forbidding any part thereof to be used on the streets of such cities, and is an attempt to take and tax property in cities for the benefit of public roads outside of cities, and violates (a) the fourteenth amendment of the constitution of the United States and article 1, [section 1], paragraph 3, of the constitution of Georgia." The direction in the act that the fund arising from

the tax therein authorized shall be distributed among the several counties of the State in proportion to the public-road mileage thereof outside the cities and incorporated towns, and that the fund can not be used on the public roads or streets of cities or incorporated towns but shall be used for the improvement of public roads outside the cities, makes serious the contention that the act is in violation of article 1, section 1, paragraph 3, and article 1, section 1, paragraph 2, of the constitution of Georgia. But, after careful consideration of the question thus made, we have reached the conclusion that there is no inherent injustice to the residents of towns and cities in this provision. Good roads throughout the country are essential to the upbuilding of towns. They are the channels through which traffic flows, and that results in the upbuilding of the towns and cities. The upbuilding of factories, stores, and commercial interests is dependent to a large extent upon the maintenance of easy means of access to and from the country surrounding the towns and cities. Facility of access to the cities by those who live in the country beyond the incorporate limits means that those living upon farms will more frequently and regularly bring the products of the farm to the cities for sale and more frequently patronize the stores located in the cities, and thereby contribute to the prosperity of the mercantile class and others who have articles to sell. While the funds arising from the tax imposed by this act are for the improvement of roads outside the cities, it can not be asserted and maintained that the mercantile class, the manufacturers, and others living in the cities are not as much benefited by the improvement of the roads in the country as those who live out in the country along those roads. Besides, the residents of the city, either for pleasure or business, will constantly traverse the roads beyond the limits of the city. There are many other considerations that might be adduced to sustain the act in question as against the attacks made upon the ground that it is in violation of the sections of the constitution last referred to above.

7. The seventh ground of the demurrer is disposed of by what is said in the fourth and fifth headnotes above.

8. In addition to filing a demurrer in this case, the plaintiff in error also filed a special plea to the accusation. The first paragraph of the plea is as follows: "The act of 1915 and the amend-

ments thereto, undertaking to place upon and collect from automobiles what they term license fees, is void, because said alleged fees are excessive and largely more than the sum necessary to enforce same; and instead of being a police measure, it is a revenue law. Defendant says that this act was passed at an extraordinary session of the General Assembly of Georgia in 1915, and the Governor's message states that one of the objects in the extraordinary call was to consider the license tax which, if lost, would cause a loss to the State at that time of approximately $120,-000.00 in its revenue. Defendant shows that during the year 1924 the State of Georgia collected for motor vehicle tags $2,532,-266.21. The expenses connected therewith amounted to 3.3 per cent. of said sum. Defendant therefore says that it clearly appears that the purpose of said act was to get, and the State has gotten, large revenue therefrom, and therefore that said alleged license fee is illegal because an attempt to collect, under the police power of the State, revenue, and the sums collected from automobiles is largely in excess of any sum needed to carry out and enforce the law governing registration." The gist of this objection to the validity of the law is, that the alleged license fee or tax is illegal because it is an attempt to collect revenue under the police power of the State, and that the sums collected from automobiles is largely in excess of any sum needed to carry out and enforce the law governing registration. We do not think that in view of all the provisions of the act it can be classed as a revenue law. It is true that a large amount will be derived from it, and that the sum collected from the tax is largely in excess of any sum needed to carry out and enforce the law governing registration. But the excess revenue derived from the tax does not become a part of the general revenue of the State. In section 20 of the act it is provided: "Be it further enacted, That the net amount of fees collected under this act, in excess of the fees specified in section 19 of this act, for the expenses and enforcement of this law, shall be turned into the State treasury to the credit of the State road fund, and that it shall be the duty of the Secretary of State to proportion said fund among the several counties of this State in the proportion that the public-road mileage outside of cities and incorporated towns of each county bears to the total number of miles of public roads in this State." Section 19 of

the act provides that one dollar of the license fees collected shall be retained by the Secretary of State for the purposes specified in that section. Then in section 20, a part of which is quoted above, the excess of the fees specified in section 19 is to be turned into the State treasury, but it will be "to the credit of the State road fund." And the revenue arising from the taxation under the provision of this act, whether arising from a license fee or a license tax, is for the improvement of roads; and these roads are for the use, convenience, pleasure, and profit of automobile owners, and in large part will be for the benefit of the inhabitants of cities engaged in commerce and trade, to whom those owning or driving automobiles over the country roads shall come to bring their wares and products and to make purchases of the articles needed in their homes. In the case of Hendrick *v.* Maryland, supra, it was said: "The movement of motor-vehicles over the highways is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves. Their success depends on good roads, the construction and maintenance of which are exceedingly expensive; and in recent years insistent demands have been made upon the States for better facilities, especially by the ever-increasing number of those who own such vehicles. As is well-known, in order to meet this demand and accommodate the growing traffic, the State of Maryland has· built and is maintaining a system of improved roadways. Primarily for the enforcement of good order, and the protection of those within its own jurisdiction, the State put into effect the above-described general regulations, including requirements for registration and licenses. A further evident purpose was to secure some compensation for the use of facilities provided at great cost from the class for whose needs they are essential· and whose operations over them are peculiarly injurious." "It is a well-known fact that motor-vehicles, and especially when driven at high speed, are far more destructive of roadways than animal-drawn vehicles. Their use materially increases the cost of maintaining the public roads; and it is neither unreasonable nor unjust that they should be required to pay, or help to pay, this increased expense. 'The imposition is a license or privilege tax charged in the nature of compensation for the damage done to the roads of the State by the driving of these machines over them, and is properly based, not upon the value of the

machine, but upon the amount of the destruction caused by it.' Hence, the registration fee may properly be based not only on the cost of inspection and regulation, but also on the cost of maintaining improved roads. A statute requiring the payment of annual fees for the operation of automobiles on the public highways, the fees graduated according to the horse-power of the machines, is a charge in the nature of compensation for damages done to the roads of the State by driving such machines over them, is properly based on the amount of destruction done by them, instead of on the value of the machines, and is not a property tax." Berry on the Law of Automobiles (3d ed.), 115, 116.

9.  What is said in the 9th headnote need not be elaborated.

*Judgment affirmed. All the Justices concur.*