ARTHUR SOLBERG, Appellee, v. JOHN A. DAVENPORT, Sheriff, et al., Appellants.

No. 40262.

SEPTEMBER 26, 1930.

REHEARING DENIED DECEMBER 13, 1930.

*John Fletcher,* Attorney-general, *Maxwell A. O'Brien,* Assistant Attorney-general, *O. T. Naglestad,* County Attorney, and *Ray E. Rieke,* for appellants.

*Hays, Baron & Mathews,* for appellee.

ALBERT, J.—Plaintiff was the owner of four motor trucks (equipped with pneumatic tires), which he used in the business of transporting freight, under the name of the "Sioux City Motor Express." His headquarters were in Sioux City, and, as we understand it, his place of operation was in Woodbury County and adjoining territory. These trucks had a manufacturer's rated loading capacity of two and one-half tons each, but plaintiff alleges that he regularly hauled from five- to seven-ton loads upon each of said trucks. He paid the fees for each of said trucks provided in Section 4913, Code, 1927 (which will be. hereinafter set out), for the year commencing January 1, 1929.

The forty-third general assembly passed Senate File 199, which became Chapter 131 of the Acts of the Forty-third General Assembly, which will also be hereinafter set out. It became effective by publication May 3, 1929.

Plaintiff alleges that, under this latter act, defendants are seeking to compel him to pay an additional fee, and it is against this additional fee that he is complaining, on the ground that

614

the law is unconstitutional, on various grounds, to which reference will hereinafter be made.

Chapter 131 of the Acts of the Forty-third General Assembly reads as follows:

"Sec. 1. The owner of any motor truck or trailer may secure a license therefor at a higher rated loading capacity than that specified by the manufacturer or maker, by the payment of the fee required therefor; and upon such application such owner shall be entitled to credit against such higher fee for the amount, if any, already paid as a license fee for such vehicle for the then current year.

"Sec. 2. It shall be unlawful to operate upon the public highways of this state any motor truck or trailer carrying a load more than twenty-five per cent in excess of the rated loading capacity on which the license fee paid on said vehicle is based. Any person owning or operating a motor truck or trailer in violation of the provisions of this section shall be guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than twenty-five ($25.00) dollars and not more than one hundred ($100.00) dollars and upon the third conviction of violation of this act by the owner or operator of such vehicle, the license on such vehicle may be revoked by the motor vehicle department. In that event the number plates and certificate of registration of such vehicle shall be returned to the county treasurer issuing the same. The motor vehicle department, or any of its agents, or any peace officer of the state, shall have authority to enforce provisions of this section."

To a fair understanding of the plaintiff's contention, we also set out in full Sections 4913 and 4916, Code, 1927.

"4913. *Trucks with pneumatic tires.* For motor trucks equipped with all pneumatic tires, the annual license fee shall be:

| "For 1 | ton or less capacity, | $15.00 per annum |
| " 1½ | " capacity, | 25.00 " " |
| " 2 | " " | 40.00 " " |
| " 2½ | " " | 65.00 " " |
| " 3 | " " | 100.00 " " |
| " 3½ | " " | 130.00 " " |

| For | 4 | ton capacity, | 160.00 | per annum |
| " | 4½ | " " | 200.00 | " " |
| " | 5 | " " | 250.00 | " " |
| " | 6 | " " . | 300.00 | " " |

"4916. *Trucks exceeding six-ton capacity.* The license fee for trucks for each ton of load capacity above six tons shall be fifty dollars in addition to the six-ton rate."

It is also claimed by the plaintiff, and conceded by the defendants, through their motion, that the word "capacity," used in Section 4913 has been construed by the executive department and is treated by all parties hereto as meaning the "manufacturer's rated loading capacity." In other words, the plaintiff's motor trucks are rated by the manufacturer at a loading capacity of two and one-half tons, and the state has construed the word "capacity" used in said Section 4913 as meaning the manufacturer's rated loading capacity, and collected taxes on the basis of such rating.

This being an action in equity, defendants filed a motion to dismiss, which was overruled by the district court; hence this appeal.

The first question called to our attention is the claim on the part of the defendants that this is an effort to enjoin the  administration of criminal law in the state of Iowa, and hence not maintainable. There is nothing in this contention, as the right to maintain this action is fully established by this court in *Bear v. City of Cedar Rapids*, 147 Iowa 341, l. c. 351; *Huston v. City of Des Moines*, 176 Iowa 455, 464.

It is further urged that the action is not maintainable because the plaintiff has a speedy and adequate remedy at law.  This is not a tenable objection; for, if the action is in the wrong forum, the relief, under the statute, is by motion to transfer to the proper forum, and not by motion to dismiss. *Dilenbeck v. Security Sav. Bank*, 186 Iowa 308.

It will be noted that the force and effect of the later enactment are somewhat confusing, in this: The title to the act indicates that the purpose of the legislature was to change its

method of computation of fees, and instead of taking the manufacturer's rated loading capacity as a basis, the fees are to be fixed upon the actual weight of the' load carried; while, under the original law, the weight of the load carried was not an element in the fixing of the fee. If the owner had a motor truck with a specified manufacturer's rated loading capacity of two and one-half tons, he paid a fee on that basis, but the manufacturer's rated loading capacity in no way limited him as to the actual weight of the load carried. The later law provides that, if the truck carries more weight than the manufacturer's rated capacity, he must pay an additional fee therefor; or, concretely, prior to the 3d day of May, 1929, the plaintiff would pay on these motor trucks a fee of $65 for each truck, while, under the new enactment, he would pay a fee of $300 on each truck. It is as against this additional fee of $235 that he complains, and alleges that the law which creates this additional fee is unconstitutional.

The first ground on which this law is assaulted is based on Article 7, Section 7, of the Constitution of Iowa, reading as follows:

"Every law which imposes, continues, or revives a tax, shall distinctly state the tax, and the object to which it is to be applied; and it shall not be sufficient to refer to any other law to fix such tax or object."

A reference to said section of the Acts of the Forty-third General Assembly makes it patent that this section of the Constitution, if applicable, has in no way been complied with. The question, therefore, for determination at this point is whether or not this additional fee provided for is a "tax," within the meaning of this section of the Constitution.

Among the many powers possessed by the state there are two inherent powers with which we are concerned: one, known as the power of taxation; the other, as the police power. The police power in matters of this kind is usually exercised by way of a license. *State v. Herod*, 29 Iowa 123; *City of Des Moines v. Manhattan Oil Co.*, 193 Iowa 1096; *City of Des Moines v. Bolton*, 128 Iowa 108; *State v. Manhattan Oil Co.*, 199 Iowa 1213.

Much confusion will be found in the decisions from careless use of language and terms, such as "license fee," "license tax," "privilege tax," "occupation tax," "permit," and "regulation fees," which are indiscriminately used; yet the word "license" has a definite and distinct meaning. In 2 Bouvier's Law Dictionary 1976 it is defined as "authority to do some act or carry on some trade or business in its nature lawful, but prohibited by statute, except with the permission of the civil authority, or which would otherwise be unlawful." See, also, *LaPlante v. State Board of Public Roads*, 47 R. I. 258 (131 Atl. 641).

Another distinction that is to be kept in mind is that the state possesses complete police power, whereas a municipality is usually limited to the exercise of such police power as is granted to it by the state; hence, among the many cases, much is said in cases where the municipal corporation is attempting to exercise its limited police power, that is not applicable where the state is attempting to exercise its police power.

It is the general rule that, where the charge for the license is imposed in the exercise of the police power, the amount which may be exacted may include and must be limited and measured by the necessary or probable expense of issuing the license, and such inspection, regulation, and supervision as may be provided for in the act and may be lawful and necessary. *State v. Manhattan Oil Co.*, 199 Iowa 1213; *State v. Osborne*, 171 Iowa 678; *Keckevoet v. City of Dubuque*, 158 Iowa 631.

That there is a very definite distinction existing between a license fee when imposed under the police power and a tax imposed for revenue under the power of taxation is evidenced by the following cases: *State v. Herod*, 29 Iowa 123; *City of Des Moines v. Bolton*, 128 Iowa 108; *City of Ottumwa v. Zekind*, 95 Iowa 622; 37 Corpus Juris 169, and notes.

Where the amount imposed is substantially in excess of and out of proportion to the expense incurred, it is generally regarded as a revenue measure. *State v. Osborne*, 171 Iowa 678; *City of Ottumwa v. Zekind*, 95 Iowa 622. This is particularly so where no provision for inspection or regulation is made by the act. *Waters-Pierce Oil Co. v. Hot Springs*, 85 Ark. 509 (109 S. W. 293); *State v. Moore*, 113 N. C. 697 (18 S. E. 342); *Densmore v. Erie City*, 7 Pa. Dist. 355. It is also a well settled rule that

the terminology used in the act is in no way controlling in determining this question as to whether it is a license or a tax. *State v. Osborne*, 171 Iowa 678; *Keckevoet v. City of Dubuque*, 158 Iowa 631; *Star Trans. Co. v. City of Mason City*, 195 Iowa 930, l. c. 956; 37 Corpus Juris 170.

With these general rules in mind, we are to determine what the intent of the legislature was in the passage of this last act. Was its intent simply to put a license charge on these trucks, or was its intent to raise revenue thereby? In reaching a conclusion on this question, it may be well to review somewhat the legislation on the subject.

The first enactment in this state was in the year 1904, which required registration with the secretary of state, who issued a certificate, the charge therefor being $1.00 for each car. No one would question that this was a license fee, pure and simple, under the police power of the state. In 1909, this fee was increased to $5.00. In 1911, the whole system was changed, and a fee of $8.00 was placed upon every motor vehicle of 20 horse power or less, and for over that horse power, a rate of 40 cents per horse power was added. It was also provided in this act that the registration fee imposed "shall be in lieu of all taxes, general or local, to which motor vehicles may be subject." Motor trucks were excepted from this act, as were motor drays and motor delivery wagons. A registration fee was charged to all dealers in automobiles. This act also provided for an apportionment of these fees among the different townships and counties, for the improvement of the public highways outside of the limits of cities and towns. See Acts of the Thirty-fourth General Assembly, Chapter 72. This law by its operation produced fees in the amount of $485,300 in the year 1912.

The thirty-eighth general assembly (Chapter 275, Acts of the Thirty-eighth General Assembly) provided for a fee on all motor trucks equipped with pneumatic tires of two and one-half tons capacity, of $45, and gradually increased to $165 for six tons; also provided that these registration fees were in lieu of all taxes, general or local, to which motor vehicles were subject. This fee continued in operation until the adoption of the Code of 1927, where the fees were increased, as shown by Section 4913 heretofore set out.

The thirty-fifth general assembly, by Chapter 122, Acts of

the Thirty-fifth General Assembly, established the state highway commission, in 1913, and aside from a small percentage of the moneys collected under these laws, which were turned over to the state, to compensate it for its trouble in issuing the licenses and collecting the fees, all of the moneys thus collected are expended under the supervision of the highway commission in the construction and improvement of the highways of the state. The total receipt of fees under these various laws for the year 1929 was approximately $12,000,000.

This court is not dumb, and has a right to consider that which everyone knows, to wit: that, about the year 1911, the use of automobiles was increasing rapidly in this state, and there came a very urgent and pressing demand for the improvement of the highways, and the burning question was to find a means to meet the demand.

In the light of these rules of law and circumstances, can any other logical conclusion be reached than that this measure was never intended as a license measure, in the true sense, but that these various laws were passed and intended for one sole purpose: that was, to raise money with which to build and improve and hard-surface the highways of the state? It was not intended in the narrow sense of an exercise of the police power, for the purpose of regulating by licenses. Many other states have had this same proposition before them, and have held that a law similar to this is not a license law, but a tax law. *State ex rel. McClung v. Becker,* 288 Mo. 607 (233 S. W. 54) ; *Saviers v. Smith,* 101 Ohio St. 132 (128 N. E. 269) ; *State v. Caplan,* 100 Vt. 140 (135 Atl. 705) ; *Opinion of the Justices,* 250 Mass. 591 (148 N. E. 889, 894) ; *Fisher Bros. Co. v. Brown,* 111 Ohio St. 602 (146 N. E. 100, 106) ; *Vernor v. Secretary of State,* 179 Mich. 157 (146 N. W. 338).

Aside from this view, it is a well established principle in cases of this kind that the legislature may exercise both the police and the taxing power in one act. See *State v. Gish,* 168 Iowa 70 ; *In re Application of Smith,* 26 Cal. App. 116 (146 Pac. 82) ; *Smallwood v. Jeter,* 42 Ida. 169 (244 Pac. 149) ; *State ex rel. McClung v. Becker,* 288 Mo. 607 (233 S. W. 54) ; *Ex rel. Ginocchio v. Shaughnessy,* 47 Nev. 129 (217 Pac. 581) ; *State v. Ingalls,* 18 N. M. 211 (135 Pac. 1177) ; *Saviers v. Smith,* 101 Ohio St. 132 (128 N. E. 269) ; *State v. Preston,* 103 Ore. 631 (206

Pac. 304) ; *Bleon v. Emery,* 60 Utah 582 (209 Pac. 627) ; *State v. Caplan,* 100 Vt. 140 (135 Atl. 705) ; *Jasnowski v. Board of Assessors,* 191 Mich. 287 (157 N. W. 891) ; *Kane v. State of New Jersey,* 242 U. S. 160 (61 L. Ed. 222) ; *Gundling v. Chicago,* 177 U. S. 183 (44 L. Ed. 725).

While the writer and several other members of the court are in favor of holding that this charge is a "tax," the majority is in favor of leaving this question undecided. Therefore we shall assume, without deciding, that the charge provided in the statute arises from the exercise of the taxing power, and not the police power. Having thus assumed, for the purposes of this case, that the fees charged herein are "taxes," we then are face to face with the original proposition stated in the beginning of this opinion: to wit, are they taxes within the meaning of Article VII, Section 7, of the state Constitution?

In the case of *Scottish Union and Nat. Ins. Co. v. Herriott,* 109 Iowa 606, we had a statute (Code, 1897, Section 1333) requiring all insurance companies to pay to the state a certain percentage of the premiums received on business done within the state, as a condition of their doing business within its limits. We held that this was a tax on business, and not on property; hence, that it did not violate Article VIII, Section 2, of the Constitution, providing that property of a corporation shall be subject to taxation the same as that of individuals.

In the case of *State v. Edmunds,* 127 Iowa 333, we had before us the discussion of a license tax on physicians. While the case held that the title to the act sufficiently complied with Article VII, Section 7, of the Constitution, we further said:

"Aside from this, however, it may well be doubted whether this provision of the Constitution applies to license taxes such as were here exacted" (citing *Howland v. City of Chicago,* 108 Ill. 496; *Braun v. City of Chicago,* 110 Ill. 186; *City of Leavenworth v. Booth,* 15 Kan. 627; *Scottish Union and Nat. Ins. Co. v. Herriott,* 109 Iowa 606).

In *Iowa Mut. Tor. Ins. Assn. v. Gilbertson,* 129 Iowa 658, we again reiterated the pronouncement in the *Herriott* case, supra, in an assault made against the act then under consideration that the law was not uniform in its operation; that it granted special privileges to some, to the exclusion of others; and that

it offended against Section 2 of Article VIII of the Constitution. We then said:

"When it is once conceded, as it must be, that the tax is not a property one, the last objection is disposed of; so that we shall give this question no further attention."

The Constitutions of different states provide either for uniformity or equality of taxation, and some provide against double taxation. The suggestion made in the above-cited Iowa cases is that constitutional provisions of this kind apply to property taxes, and not to the kind of taxes we have under consideration in the present case. This has been the unbroken line of authority, as is shown by the following list of cases: *State v. Collins,* 94 Wash. 310 (162 Pac. 556); *Ruggles v. State,* 120 Md. 553 (87 Atl. 1080); *In re Application of Kessler,* 26 Ida. 764 (146 Pac. 113); *In re Application of Schuler,* 167 Cal. 282 (139 Pac. 685); *Harder's Fire Proof S. & V. Co. v. City of Chicago,* 235 Ill. 58 (85 N. E. 245); *State v. Ingalls,* 18 N. M. 211 (135 Pac. 1177); *Kane v. State,* 81 N. J. Law 594 (80 Atl. 453); *In re Hoffert,* 34 S. D. 271 (148 N. W. 20); *Smallwood v. Jeter,* 42 Ida. 169 (244 Pac. 149); *State ex rel. McClung v. Becker,* 288 Mo. 607 (233 S. W. 54); *Fisher Bros. Co. v. Brown,* 111 Ohio St. 602 (146 N. E. 100); *Saviers v. Smith,* 101 Ohio St. 132 (128 N. E. 269); *Lee v. State,* 163 Ga. 239 (135 S. E. 912); *Whaley v. Northern Road Impr. Dist.,* 152 Ark. 573 (240 S. W. 1); *Lillard v. Melton,* 103 S. C. 10 (87 S. E. 421); *State v. Caplan,* 100 Vt. 140 (135 Atl. 705); *Atkins v. State Highway Department* (Tex. Civ. App.), 201 S. W. 226; 1 Berry on the Law of Automobiles (6th Ed.) 102-105; 19 Ruling Case Law 19, Section 11; 5 A. L. R. 732; *Braun v. City of Chicago,* 110 Ill. 186.

It is quite evident that the charge herein is a charge for the privilege of using the streets and highways as a place of business. The highways belong to the public for ordinary use and general traffic, and they are free and common to all. Such use, however, is a mere privilege, and not an inherent or natural right. *Huston v. City of Des Moines,* 176 Iowa 455, at 477; *Melconian v. City of Grand Rapids,* 218 Mich. 397 (188 N. W. 521, 524); *Memphis St. R. Co. v. Rapid Transit Co.,* 133 Tenn. 99 (179 S. W. 635); *Desser v. City of Wichita,* 96 Kan. 820 (153 Pac. 1194); *Greene v. City of San Antonio* (Tex. Civ. App.),

178 S. W. 6; *Hadfield v. Lundin*, 98 Wash. 657 (168 Pac. 516);
*Ex Parte Dickey*, 76 W. Va. 576 (85 S. E. 781); *In re Hoffert*,
34 S. D. 271 (52 L. R. A. [N. S.] 949).

Such right to the use of the public highways is not absolute
and unqualified, but is subject to the limitation or control of the
legislature. While these are the general rights of the public on
the highways, they do not carry with them a right to use the
public highways as a place of business. *Greene v. City of San
Antonio* (Tex. Civ. App.), 178 S. W. 6; *Hadfield v. Lundin*, 98
Wash. 657 (168 Pac. 516); *Le Blanc v. City of New Orleans*, 138
La. 243 (70 So. 212); *Ex Parte Dickey*, 76 W. Va. 576 (85 S. E.
781); *Desser v. City of Wichita*, 96 Kan. 820 (153 Pac. 1194);
*Melconian v. City of Grand Rapids*, 218 Mich. 397 (188 N. W.
521). The right to make such charges under these circumstances
for the use of the public highways has been affirmed in the fol-
lowing cases: *Kane v. State of New Jersey*, 242 U. S. 160 (61
L. Ed. 222); *Hendrick v. State of Maryland*, 235 U. S. 610 (59
L. Ed. 385); *Bekins Van Lines v. Riley*, 280 U. S. 80 (74 L.
Ed. 178); *Smith v. Commonwealth*, 175 Ky. 286 (194 S. W. 367);
*Jackson v. Neff*, 64 Fla. 326 (60 So. 350); *Bozeman v. State*, 7
Ala. App. 151 (61 So. 604); *State v. Ingalls*, 18 N. M. 211 (135
Pac. 1177); 1 Berry on the Law of Automobiles (6th Ed.) 115,
116.

Aside from what has been said heretofore, it is a well-known
fact that the state has improved its roads at a large expenditure
of money, and is now engaged in creating a net work of hard-
surfaced or paved roads within the state. It is also true that the
heavier the load carried on these hard-surfaced roads, the more
damage and destruction thereto. This necessitates improve-
ments, and an increase in the cost of maintenance; and it is no
more than right and just that those who contribute to the neces-
sity of construction and maintenance of such roads should pay,
or help to pay, the cost of such increased expense in the main-
tenance thereof. *Kane v. State of New Jersey*, 242 U. S. 160
(61 L. Ed. 222), affirming 81 N. J. Law 594 (80 Atl. 453); *Lee
v. State*, 163 Ga. 239 (135 S. E. 912); *State v. Collins*, 94 Wash.
310 (162 Pac. 556); *Smallwood v. Jeter*, 42 Ida. 169 (244 Pac.
149); *State v. Caplan*, 100 Vt. 140 (135 Atl. 705); *Opinion of
the Justices*, 250 Mass. 591 (148 N. E. 889); *In re Hoffert*, 34
S. D. 271 (148 N. W. 20); *Saviers v. Smith*, 101 Ohio St. 132

(128 N. E. 269); *Camas Stage Co. v. Kozer,* 104 Ore. 600 (209 Pac. 95).

It may be noted that in *State v. Caplan,* 100 Vt. 140 (135 Atl. 705), the Vermont court had before it the question of a motor-bus law, which provided, among other things, for a fee to be paid. That court held the fee to be a tax, but in the closing paragraph said:

"It may be true that in some of the foregoing cases the right under discussion is assigned to the police power, rather than to the taxing power. But in our view, this makes no difference in the result. You may call the charge imposed a 'fee,' or you may call it a 'tax;' you may call the enactment imposing it a 'police measure,' or you may call it a 'revenue measure;' it makes no difference. The validity of the act in the respects here called in question is established."

In *Iowa Motor Vehicle Assn. v. Board of Railroad Com.,* 207 Iowa 461, we had under consideration a very similar statute to this, in which a tax was made, very like the one in the present case. In concluding that opinion we said:

"In the instant case, the law is based upon the actual manner of operation, and there can be no doubt that, where a state, at its own expense, furnishes special facilities for the use of those engaged in commerce, it may exact compensation therefor. It has the right to say, if it pleases, that no person or corporation shall use its public highways as a transportation line for hire. The right of a citizen to travel upon the highway and transport his property thereon in the ordinary course of living and business is radically different from that of one who makes a certain portion of the highway his place of business, and uses it for private gain in the transportation of freight or passengers, as under the terms of the statute in question."

Our conclusion is that, while the charges made herein are considered as a tax, they are not a property tax, and therefore do not violate Article VII of Section 7 of the Constitution.

Another question raised here is that Chapter 131 of the Acts of the Forty-third General Assembly is in fact an amend-

624

 ment or revision of Section 4913, Code, 1927. We think this assertion of the appellee's is correct; but he claims that Chapter 131 should be held invalid, because of Section 47, in Chapter 3, of the Code, 1927, which reads as follows:

"*Form of Bills.* Bills designed to amend, revise, codify, or repeal a law:

"1. Shall refer to the number of the section or sections of the Code to be amended.

"2. Shall refer to the number of the chapter or chapters and title of the Code to be amended.

"3. Shall refer to the number of the general assembly and of the sections and chapters of the acts thereof to be amended in case the bill relates to a section or sections of an act not appearing in the Code.

"4. All references shall be expressed in words, followed. by the numerals in parentheses, and if omitted the reporter of the supreme court in preparing acts for publication in the session laws shall supply the same."

With the latter proposition we cannot agree. The general rule is too well settled to need citation of authority that each legislature is an independent body, entitled to exercise all legislative power under the limitation of the Constitution of this state and the United States, and no legislature can pass a law which would be binding on subsequent legislatures. We think this rule applies to the situation before us. In other words, Section 47 of the Code was utterly disregarded by the legislature; yet this act cannot be held invalid because thereof. Authorities on this proposition are not numerous, but those we have been able to find announce this doctrine. See *Maigault v. S. M. Ward & Co.*, 123 Fed. 707; *Cook v. State*, 26 Ind. App. 278 (59 N. E. 489); *State, Use Rathbone, v. County Court of Wirt County*, 37 W. Va. 808 (17 S. E. 379).

We are treating this case, as do counsel in their briefs and arguments, on the theory that the plaintiff is using these trucks on the highways of the state as a common carrier. The district court having held to the contrary, it erred in its decision.—*Reversed.*

All the justices concur.